CENTRAL VERMONT RAILROAD COMPANY *v.* WOODSTOCK RAILROAD COMPANY.

[IN CHANCERY.]

*Right of Eminent Domain. Crossing of One Railroad by Another. Gen. Sts. c. 28, ss. 17, 84–86.*

The charter of the Woodstock Railroad Company conferred upon it the right to extend its road across that of the Vermont Central Railroad Company, and the charter of the latter company was not inconsistent with that right. The charter of the former company did not prescribe the mode by which it should obtain the right and title to the land on which it should construct its road, nor the manner in which it should cross other roads, but gave it " all the powers and privileges," and subjected

it to "all the duties, liabilities," &c., prescribed by c. 28, Gen. Sts. The Woodstock Railroad had connection with the Vermont Central Railroad at White River Junction, but the Woodstock Company, wishing to extend its track across the Vermont Central, so as to make a more convenient and economical connection, made application under s. 17,[*] c. 28, Gen. Sts., to two judges of the Supreme Court, for the appointment of commissioners to determine damages to land-owners, &c., and took all due proceedings thereunder. The Central Vermont Railroad Company, receiver, &c., of the Vermont Central Railroad Company, &c., thereupon filed a bill to restrain the Woodstock Railroad Company ⋅ from making the proposed crossing. *Held*, that the Woodstock Railroad Company should have proceeded under ss. 84–86 of c. 28, which provide for the appointment of commissioners by the Supreme Court in such cases, and that, not having thus proceeded, it should be perpetually enjoined.

APPEAL from the Court of Chancery.

The bill was brought by the Central Vermont Railroad Company, as receiver and manager under direction of the Court of Chancery of the Vermont Central and the Vermont & Canada Railroads, to restrain the Woodstock Railroad Company from extending its road across the tracks of the Vermont Central Railroad at White River Junction, at which place there was a junction of those roads and of the Northern and the Passumpsic Railroads. The proposed extension was intended by the petitionee to afford its road better and more economical connection with the other roads, and greater facility and economy in the doing of its business.

The bill alleged that the petitionee was authorized by the act by which it was incorporated, approved October 30, 1863, to build a railroad from the village of Woodstock to some point on or near White River or Connecticut River, in either the town of Hartland or the town of Hartford, as the petitionee might elect, but that the charter of the Vermont Central Railroad Company, granted in 1843, contained no reserved rights authorizing the crossing of its road by any other railroad; that the petitionee's road, its business being very small, already had all necessary and reasonable means of connection with said other roads; that there were a great many tracks on the Vermont Central Railroad at

---

[*] Which provides for taking land and other property by railroad companies by proceedings *in invitum*, and declares that, "such company shall be deemed *seised and possessed* of all such land or other property as shall have been appraised by said commissioners."

said junction, and a great many trains passing over the same daily ; that said tracks were constantly used for the making up, dividing, and re-arranging of trains, and that their free and unobstructed use for such purposes was absolutely necessary for the beneficial enjoyment of said road ; that the proposed extension, if permitted, would greatly impair the beneficial use of the Vermont Central Railroad, endanger passengers over said road, and obstruct the exchanging and making up of trains on said tracks. The bill also alleged that the pretended proceedings for the procurement of said extension were by way of application under s. 17, c. 28 of the Gen. Sts., to two of the judges of the Supreme Court, and appointment by them of three commissioners to determine damages, &c., were without consent of the petitioner or of the Court of Chancery under whose direction the petitioner was acting, and were irregular and without warrant of law ; and that the extension, if made, would disturb the petitioner in the possession and enjoyment of the property placed in its hands by said court.

The•answer alleged that the petitionee's charter expressly conferred " the right of crossing the railroad of any other railroad company for the transportation of persons or property," with " all the rights incident to corporations," and that the charter of the Vermont Central Railroad Company in effect authorized the granting to other railroad corporations of the right to cross its road in the valley of the Connecticut River, by section 20 thereof, which provided as follows : " Nothing in this act shall authorize said company to construct a railroad in the valley of Connecticut River so as to interfere with any railroad that may hereafter be authorized to be made in said valley." The answer admitted the institution of proceedings for the alleged extension, and alleged in due form the doing of.all acts necessary therein to invest the petitionee with the rights usually obtained under such proceedings. The answer also alleged, in effect, that the petitionee had not all necessary and reasonable conveniences with the existing connection for the transaction of its business, but, on the contrary, was put to great inconvenience and expense ; and alleged that the proposed extension would be neither more inconvenient nor ex-

Central Vt. R. R. Co. v. Woodstock R. R. Co.

pensive to the petitioner, nor more dangerous to the traveling public, than the existing arrangement.

The answer was traversed and testimony taken. The testimony bore mainly upon the question of the convenience and safety of the crossing involved in the proposed extension. The provisions of the two charters mentioned in the pleadings appear sufficiently from the opinion of the court. It was agreed that no leave was ever obtained from Franklin County Court of Chancery by the petitionee for the making of any crossing at White River Junction.

At the September Term, 1877, the court, ROYCE, Chancellor, decreed, *pro forma*, that the petitionee be enjoined from making said crossing. Appeal by the petitionee.

*W. C. French* and *E. J. Phelps*, for the petitionee.

Property held by an incorporated company stands on the same footing, as to the question here involved, with that held by individuals, and is equally liable to be taken under the right of eminent domain. *West River Bridge Co.* v. *Dix*, 6 How. 507; *W. R. I. Co.* v. *Vt. Central Railroad Co.* 21 Vt. 530.

The Legislature might constitutionally authorize the crossing, even in the absence of any reservation to that effect in the charter of the Vermont Central Railroad Company. *Munn* v. *Illinois*, 4 Otto, 113; *C. B. & Q. R. Co.* v. *Iowa*, 4 Otto, 155; *Peik* v. *C. C. & N. W. R. Co.* 4 Otto, 165.

*B. F. Fifield* and *Noble & Smith*, for the petitioner.

The proceedings of the petitionee are void, for that the court, through its receiver, was in possession of the property invaded, and leave of the court was not obtained. *Vt. & Canada Railroad Co.* v. *Vt. Central Railroad Co.* 46 Vt. 792, and cases *passim*.

The power delegated to the petitionee by its charter must be exercised with due regard to the rights of others. With any other exercise, the courts would interfere. The right of eminent domain has been once exercised by the Vermont Central Railroad Company. The rights of that company cannot be invaded except

from the highest public necessity. Besides, the public safety is a matter of the highest consideration. The petitionee cannot cross the yard, upon an authority to cross the road only. The yard is the road and a good deal more. *S. C. R. R. Co.* v. *A. R. R. Co.* 13 Rich. (S. C.) Eq. 339 ; *P. & C. R. R. Co.* v. *S. & W. Pa. R. R. Co.* 77 Penn. 186 ; *Bonaparte* v. *Camden & Amboy R. R.* 1 Bald. 218 ; *Walker* v. *Mad River & Lake Erie R. R.* 8 Ohio, 39 ; *Coots* v. *The Clarence R. Ry. Co.* 5 Eng. Ch. 184 ; *C. & U. W. R. R. Co.* v. *C. & P. R. R. Co.* 8 Biss. 219 ; *Hatch* v. *Vt. C. R. R. Co.* 25 Vt. 49, 61 ; 2 Redf. Railw. 359 ; *Albany U. R. R. Co.* v. *Brownell*, 24 N. Y. 345.

The petitionee has surveyed and located its extension under the general law. The commissioners have no discretion as to manner or place of crossing. But they are not the commissioners provided for by the statute in case of the crossing of one railroad by another. The charter of the petitionee gives the right to cross the road, but the charter is made subject to the provisions of chapter 28 of the Gen. Sts. This case, then, comes within section 86 of that chapter. By the proceedings begun, the petitionee would acquire the land, whereas it is entitled at most only to an easement therein.

The opinion of the court was delivered by

PIERPOINT, C. J. That the Woodstock Railroad Company have the right to extend their road across the road of the Vermont Central at some place and in some manner, is not seriously questioned. The Woodstock Company's charter confers the right, and the granting of that right is not inconsistent with the charter of the Vermont Central. But the controversy between the parties arises in respect to the place where and the manner in which the Woodstock Company is seeking to exercise the right of crossing the Vermont Central road. The charter of the Woodstock Company does not prescribe the mode and proceedings by which the said company shall obtain the right and title to the land upon which to construct its road, and is silent as to the manner in which it may cross other railroads, but gives it " all the powers and privileges," and subjects it to " all the duties, liabilities, and

other provisions prescribed in chapter twenty-eight of the General Statutes," with one exception that is immaterial in this case.

By the 17th section of said chapter 28, it is provided that when any railroad corporation shall not have acquired by gift or purchase any land, real estate, or other property taken or required for the construction and maintenance of their road, &c., and the parties do not see fit to agree about the price of such land, &c., application may be made to any two judges of the Supreme Court, who shall appoint three disinterested commissioners to determine the damages which the owner or owners of such land or property may have sustained or shall be likely to sustain, &c. ; and upon payment of the damages determined upon by such commissioners, &c., in the manner prescribed in said 17th section, such company shall be deemed to be *seised* and *possessed* of all such land or other property as shall have been appraised by said commissioners. It is under this 17th section that the Woodstock Company are proceeding to obtain the crossing to which they are entitled by their charter. The survey was made, the parties did not agree, commissioners were appointed, an appraisal of damages was made, the money was deposited, and all the requirements of said section were duly complied with ; an appeal was taken from the appraisal. That suspends the proceeding for the present, but when the damages are finally settled and paid, if this mode of proceeding is correct and proper, the Woodstock Company will become seised and possessed of the land so seized and taken, for all the purposes of their road ; and such seisin and possession has been repeatedly held in this State to be an exclusive possession. The legitimate result would be that the Vermont Central road would be severed, not crossed, cut in two, and a piece of the Woodstock road laid between the two parts, over which piece the Central Company would have no control. This would give the Woodstock Company the absolute right to say where the crossing should be located, how it should be constructed and how controlled, without being under any obligation to regard the interests of the Central road or the public.

It cannot be supposed that the Legislature contemplated any such result when it conferred upon the Woodstock Company the

58

right to cross other railroads in the location and construction of its own. If the Legislature had left it thus, without any provision of law applicable to such a difficulty, it might well be claimed that a court of chancery should intervene, in view of the obvious intention of the Legislature, and regulate and adjust the matter with reference to the interests and rights of both parties and the public.

Where railroads intersect, or where they are to cross each other, it is to be expected that controversies will arise as to the place and manner of such crossing and intersection. To leave the matter to either one of the parties to determine would not be just, and to leave it solely to the agreement of the parties would not be wise; for where interests conflict, agreements are difficult, when there is no other resort. To meet this, the Legislature has provided in the 84th section of said chapter 28, that when there is a union or intersection of two different railroads, owned or controlled by different corporations or other persons, and the parties cannot agree in respect thereof, a commission may be appointed by the Supreme Court to settle and determine the matter between them; and it specifies particularly the mode and manner of proceeding to that end. The 86th section of said chapter provides " that any railroad company may construct their road across the track of any other such corporation already chartered, if the right so to do is reserved in the act creating such last-mentioned corporation, and may also cross any other railroad hereafter granted, at any point on its route, and upon the grounds of such other company, and if the two corporations cannot agree upon the amount of compensation to be paid therefor, or upon the points and manner of such crossing, the same shall be ascertained and determined by commissioners to be appointed and paid in the manner provided in the two preceding sections."—sections 84 and 85.

The Woodstock Company need not go to this section for its right to cross the Vermont Central road; that right is given by its charter; but it is not material from which it takes its right, so long as it exists. The provision in the charter of the Vermont Central, that " nothing in this act shall authorize said company to

construct a railroad in the valley of Connecticut River so as to interfere with any railroad that may hereafter be authorized to be made in said valley," is a sufficient reservation of the right to cross the track of said company when the Legislature confers the right upon another corporation to cross their road in said valley; and as the Woodstock Company take their charter subject to all the liabilities imposed and rights conferred by said chapter 28, we think it quite clear that the proper tribunal to settle and adjust the controversy existing between the said parties in respect to the said crossing is a commission to be appointed in accordance with the provisions of said chapter 28, section 86, and not by a commission appointed under section 17. Commissioners under said last named section have no authority except to appraise and assess damages as specified in said section, and all concessions by the railroad company are entirely voluntary on its part; but commissioners under section 86 have jurisdiction of the whole subject, both as to the precise place and manner of the crossing, subject to the action of the Supreme Court on the coming in of their report. This being so, we think any intimation by this court on this appeal, as to the manner in which such commissioners should exercise their authority, would be premature.

The decree of the Chancellor is affirmed, and the case remanded with a mandate that the injunction be made perpetual, and that costs be allowed the petitioners in this court and the Court of Chancery, but that no costs be allowed the petitioners for witnesses and the taking of their testimony.