RUTLAND-CANADIAN RAILROAD COMPANY *v.* CENTRAL VERMONT RAILWAY COMPANY.

January Term, 1900.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed February 20, 1900.

*Railroads—Jurisdiction of commissioners under V. S. 3860 and 3864*—Commissioners under V. S. 3860 and 3864 appointed on the petition of one railroad company to fix upon the manner of crossings over and connections with the railroad of another company, and the amount of compensation to be made therefor, have not jurisdiction to establish a line for the petitioner which would involve the acquisition of a right of way by the exercise of the right of eminent domain.

*Eminent domain*—The establishment for one railroad company of a line about 1200 feet in length over and along lands acquired and actually used and occupied by another railroad company for the purposes of its incorporation and not connecting with the line of such other company, would involve the taking of a right of way by the exercise of the right of eminent domain.

*Eminent domain—Property already taken for a public use*—Property already taken for a public use cannot be taken for another public use without legislative authority expressly given or necessarily implied.

*Same*—Authority given in general terms to take by the right of eminent domain is not sufficient to authorize the taking, for an inconsistent purpose, of property already devoted to a public use, and necessary for the purpose to which it is devoted.

*Same—Implied authority to take*—Implied authority to take can only arise from the language of the legislative act, or from facts making such taking necessary to the beneficial enjoyment and efficient exercise of rights and privileges granted.

*Same—Implication from necessity*—The necessity which raises an implication of authority to take, for a public use, property already taken for another public use, must arise from the nature of things over which the corporation desiring to take has no control, and not from a necessity created by such corporation for its convenience or economy.

*Same*—When such implied authority arises from necessity, the taking can be only to the extent of the necessity.

*Jurisdiction to award a connection in lieu of a crossing*—The petitioner having, under the principles of law applicable to the facts of this case, neither express nor implied authority to acquire a right of way and establish an independent line through the petitionee's yard, commissioners appointed under V. S. 3860 and 3864 had jurisdiction to award a connection and not a crossing.

*Costs*—It not appearing that any fault of the petitionee necessitated the proceedings, and the petitioner having failed in its main contention, the petitionee was allowed to recover its costs, and the petitioner ordered to pay the commissioners' fees.

This case came before the Supreme Court at the January Term, 1900, on the question of the confirmation of an award of commissioners filed November 7, 1899. The commissioners decided that they had jurisdiction over the whole subject of crossing and in lieu thereof of connections, and among other things reported as follows:

"If the commission has jurisdiction over the whole matter, we find and decide that in view of the convenience of the public in connection with the joint interchange of through, and the more convenient handling of local traffic, and of the inconven-

9

ience and danger to the public in consequence of the proposed and necessary street crossing at grade on College Street between the City of Burlington, and the freight and passenger stations of the Central Vermont Railway Company and steamboat docks; the interests of the public, as well as the interests of both parties to the controversy, will be best served by a connection with, and by a joint use of tracks and station of the defendant. The connection to be made by single track, to be constructed by, and at the expense of the Rutland-Canadian Railroad, from the point where their line enters upon the lands of the Central Vermont on the north, across the side track of the Standard Oil Company (which shall be properly protected with signals), and continuing southward between the main track of the Central Vermont, and the track to the west thereof, to a point on their main line near the engine house as now located, where connection will be made with the two tracks to be provided by the Central Vermont, and maintained and operated as a double track system for both roads, to and through the Central Vermont station to a connection with the Rutland road at the south side of College Street; to be operated under conditions and in manner to be hereafter described."

*Frederick H. Button* for the petitioner.

*Chas. M. Wilds* for the petitionee.

ROWELL, J. The petition alleges that it is necessary for the petitioner's railroad to cross the petitionee's railroad, grounds, and property at Burlington, with necessary tracks, turnouts, sidings, switches, and other conveniences; and prays for the appointment of commissioners to "fix upon the manner of such crossings and connections and the amount of compensation to be made therefor."

Commissioners were appointed, and reported to a special term of this Court appointed for that purpose. By their report it appears that the road of the petitionee connects with that of the Rutland Railroad Company at Burlington, each having a

railroad yard at its end adjoining that of the other; that the road of the petitioner will reach the yard of the petitionee on the west side of its main track at the north end of its yard; that by connections with the tracks of the petitionee it could reach the tracks and yard of the Rutland road, and make a through connection with that road, and traffic connections with the road of the petitionee; that the petitioner disclaimed any desire to connect with the tracks of the petitionee, or with the Rutland road by the tracks and yard of the petitionee, but claimed the right to cross with tracks under the main track of the petitionee at the north end of its yard, and to connect with the Rutland road by tracks along the east side of, and avoiding, the main tracks of the petitionee, according to a location submitted; that that line would cross the lands and one side-track of the petitionee for a considerable distance, thence, after crossing the roadway of the petitionee under the tracks of its main line, run on the grounds of the petitionee along its main line about 1200 feet in a cut to be made of a depth sufficient to permit such crossing under, and would then cross the ground whereon the engine-house of the petitionee stands and tracks leading to it lie, passing through said engine-house, and thence along Lake Street, which was laid as a public highway over lands of the petitionee, and along and across which the petitionee has side tracks, some of which would have to be removed and others crossed, to College Street; and thence over other lands, to the yard and tracks of the Rutland road, independently of, and without uniting or connecting in operation with, the road of the petitionee; and that the petitioner disclaimed any desire to have any point or manner of crossing the petitionee's road determined by the commissioners otherwise than by including these approaches, substantially along and upon this location, to the point of crossing under the main tracks of the petitionee.

The commissioners thought that the establishment of a line along the line and lands of the petitionee, to and beyond the point of crossing the petitionee's line, without uniting or connecting with it, over lands acquired by the petitionee and actually

used and occupied by it for the purposes of its incorporation, would involve the acquiring of a right of way by exercise of the right of eminent domain, and that that was a matter not submitted to them; and that, in view of the disclaimers of the petitioner, there was nothing left for them to determine.

The Court agreed with the commissioners, and held that the establishment of the line asked for would involve the acquisition of a right of way by exercise of the right of eminent domain, which was a matter not submitted to them and not within their jurisdiction; and recommitted the report, with instructions to proceed according to their commission, if the petitioner desired further action on their part.

Further action having been desired, the commissioners again heard the parties, when the petitioner offered evidence only for an under crossing at the point proposed by it, and claimed that the commissioners had no jurisdiction of any other question; while the petitionee claimed that they had jurisdiction of the whole matter, and that, in the circumstances, the petitioner should connect its road with the Rutland road over the petitionee's tracks, and that the petitioner should use the petitionee's depot. The petitioner said it did not withdraw all claim for a connection and for going through the petitionee's yard, if the commissioners decided that they had jurisdiction of the whole matter. The commissioners did decide that they had jurisdiction of the whole subject of crossing, and in lieu thereof, of connections, and have awarded a crossing, as claimed by the petitioner, if the petitioner is entitled thereto without regard to the question of a connection by use of the tracks through the petitionee's yard; but if they had jurisdiction of the whole matter, they award a connection and not a crossing.

The petitioner claims that the commissioners erred in deciding that they had jurisdiction to determine between an independent crossing and a joint use of the petitionee's tracks, and contends that it has a right to an independent route, and asks therefor.

It is the law of this State that property already taken for a public use cannot be taken for another public use without legislative authority expressly given or necessarily implied. *Barre Railroad Co.* v. *Other Railroad Companies*, 61 Vt. 1, 13. And such implication arises only from the language of the act or from a state of facts showing such taking to be necessary in order to beneficially enjoy and efficiently exercise the rights and privileges granted ; and then the taking can be only to the extent of the necessity, and that necessity must arise from the nature of things over which the corporation desiring to take has no control, and not from a necessity created by such corporation for its convenience or economy. 10 Am. & Eng. Ency. of Law, 2d ed., 1095. Authority given in general terms, therefore, is not sufficient to authorize the taking for an inconsistent purpose, of property already devoted to a public use and necessary for the purpose to which it is devoted. Note to *Appeal of Sharon Railroad Co.*, 9 Am. St. Rep. 142-3. Thus, in *Worcester & Nashua R. R. Co.* v. *Railroad Commissioners*, 118 Mass. 561, the statute authorized the Boston, Barre & Gardner Railroad Company to extend its road to a certain union passenger station in the City of Worcester, and for that purpose to locate, construct, and maintain its road within the location of any other railroad corporation in said city ; and it was held that this did not authorize the taking of another railroad company's property, but that the land over which the new location was made still remained a part of the old location also. The court applied the doctrine above stated, and said that a right to extend, locate, construct and maintain a railroad is doubtless sufficient to authorize the taking of lands necessary for that purpose when there is nothing in the statute to restrict its effect ; but that no franchise granted to one railroad corporation confers the right, without express terms or necessary implication, to appropriate to its use lands already devoted to a like purpose by the location of another railroad. So in *Housatonic R. R. Co.* v. *Lee & Hudson R. R. Co.*, 118 Mass. 391, it is held that a charter to build a railroad between

certain points, without prescribing the course and direction, but leaving that to be determined and established by the corporation, does not, *prima facie*, give any power to lay out the road over land already devoted to, and within the recorded limits of, another railroad. The court said that it is not to be presumed that the Legislature intended to allow land thus devoted to one public use to be subjected to another, unless the authority is given in express terms or by necessary implication ; and that such implication can be found only in the language of the act or from application of the act to the subject-matter, so that the railroad could not be laid, in whole or in part, by reasonable intendment, on any other line ; that in the charter in question there were no such words, except those authorizing an entry upon, a uniting with, and use of, the railroad of another corporation at a certain place ; but that it did not appear that there was any physical necessity that the defendant's location should be made within the location of such other company as it had been.

It is said in *The Matter of the City of Buffalo*, 68 N. Y., at page 175, that in order for the implication to arise from a general grant of power, the face of the act must show it, or it must appear from the application of it to the particular subject-matter that some special object sought to be attained by the exercise of the power granted cannot be attained in any other place nor in any other manner.

Applying these principles to the case in hand, the question presented is of easy solution. The petitioner's charter authorizes it to construct, maintain, and operate a railroad for public use from some point in the City of Burlington on or near the railroad of the Rutland Railroad Company, to some convenient points on the Canada line and the New York line in the town of Alburgh without prescribing its course or direction. It gives it the right of eminent domain, and all the rights and privileges that the general law confers upon railroad companies and corporations to acquire title and possession of property covered by the location

of its road. It also gives it the right to cross or connect with any railroad on its right of way, to be availed of under the general law if the parties cannot agree. All of these rights and privileges are granted in general terms and not otherwise, and there is no language in the charter from which an implication can arise that the Legislature intended to give the petitioner authority to acquire a right of way through the petitionee's yard, used and occupied by it, as the commissioners find, for the purposes of its incorporation, and thereby cut said yard in two by an independent line of which the petitioner would be seized and have the exclusive possession and control. Nor do the facts before us show a necessity for the petitioner to have such a right of way in order to the beneficial enjoyment and efficient exercise of the rights and privileges granted to it; for the commissioners find that the interest of both parties, as well as that of the public, will be best served by a joint use of the petitionee's tracks and station. *The Central Vt. Railroad Co.* v. *The Woodstock Railroad Co.*, 50 Vt. 452, is full authority against the petitioner's right to an independent line, and in favor of the jurisdiction that the commissioners assumed in this case.

Therefore their award, as far as it relates to the undergrade crossing, is disaffirmed, but in all other respects it is confirmed.

It not appearing that any fault of the petitionee's necessitated the bringing of the petition, and the petitioner having failed in its main contention, let the petitionee recover its costs, and let the petitioner pay the commissioners' fees.