WILLIAM JACOBSON & others *vs.* PARKS AND RECREATION COMMISSION OF BOSTON & another.

Suffolk. February 5, 1963. — April 1, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Parks. Municipal Corporations,* Parks. *Equity Jurisdiction,* To enforce observance of purpose of conveyance, Public interest, Declaratory relief. *Attorney General. Public Interest. Boston. Equity Pleading and Practice,* Parties, Declaratory proceeding. *Words,* "Conveyance."

The filing of a document by the Attorney General in a suit in equity under G. L. c. 214, § 3 (11), reciting that he "intervenes as a party petitioner" made him a party although the document was entitled "Petition to Intervene." [642]

St. 1899, c. 274, giving to the board of park commissioners of the city of Boston "the custody, care and control" of certain land purchased by the city many years before for a substantial consideration for no specific purpose, and granting the board the same powers over the land as if it had been taken by the board by eminent domain, made the land park land, but did not constitute a "gift or conveyance" of the land for park purposes within G. L. c. 214, § 3 (11), so as to support a suit thereunder by ten taxpayers and by the Attorney General to enforce such purposes. [643–644]

Land held by a municipality for park purposes may be disposed of only by specific authority from the Legislature. [644]

Apart from G. L. c. 214, § 3 (11), the Attorney General was the proper officer to protect the general public interest in park land which a municipality proposed to sell for an apartment building site. [644]

In a suit in equity by the Attorney General against a municipality and its park department, an appropriate case for declaratory relief under c. 231A was presented in view of a controversy between the Attorney General and the defendants as to the propriety of a proposed sale by the municipality of park land for an apartment building site; a prayer of the bill for a declaration as to the validity of the sale and purchase contract did not make the prospective purchaser a necessary party to the suit. [645]

St. 1899, c. 274, making all lands owned by the city of Boston within a described area park land and authorizing the city's board of park commissioners to acquire such other lands within the area not owned by the Commonwealth as the board deemed desirable for park purposes and to sell any lands owned by the city within the area and "use the proceeds thereof in payment for any lands taken for park purposes under" that

act, precluded sale of a certain parcel of park land within the area without a contemporaneous arrangement for the acquisition by the city for park purposes, from the proceeds of the sale, of other land in the area not owned by the Commonwealth to replace the parcel sold. [642–643, 646]

BILL IN EQUITY filed in the Superior Court on January 16, 1962.

The suit was heard by *Gourdin, J.*

*William H. Kerr* for the defendants.

*Charles F. Mahoney (Morris M. Goldings* with him) for the plaintiffs.

*Paul B. Sargent,* Assistant Attorney General, for the Attorney General.

WHITTEMORE, J. This is a bill in equity brought by twelve taxpayers of the city of Boston under G. L. c. 214, § 3 (11), against the city's parks and recreation commission (hereinafter parks department) and, by amendment, the city, in order (quoting the words of the statute) "to enforce the purpose . . . of . . . [the] gift or conveyance" to the city of land in its Brighton district included within the Chestnut Hill Reservoir grounds, for the "specific purpose . . . in trust or otherwise" of a park. The Attorney General intervened as a party plaintiff under the express authorization of § 3 (11) which provides that, the proceeding having been begun by taxpayers with leave of court, "the attorney general . . . may intervene as a party at any stage of the proceedings." Although entitled "Petition to Intervene" the document filed recites that the Attorney General "intervenes as a party petitioner"; the filing of the document made the Attorney General a party.

The bill of complaint alleged that the city through the parks department with the approval of the mayor and the written authorization of the city council had agreed, illegally, to sell for an apartment building site a parcel of park land at Chestnut Hill Avenue and Commonwealth Avenue of an area of about 64,000 square feet.

The case was heard on a statement of agreed facts and, after findings, rulings and order for a decree, a final decree was entered, from which the defendants have appealed, en-

joining the defendants from selling the land "except as part of a plan to adjust the park area of which it is a part, and without first arranging for the acquisition by the City of Boston, by virtue of . . . [St. 1899, c. 274], of other land to be added to the said park area and to be purchased with the proceeds of such sale."

1. The bill may not be maintained under G. L. c. 214, § 3 (11). The land was purchased by the city in 1865 for a substantial consideration for no specific purpose recited in the deeds, "to have and to hold . . . in fee simple forever." Statute 1865, c. 131, had authorized the city to build an additional reservoir and this suggests the occasion for the purchase of the land. Statute 1875, c. 185, established a board of park commissioners (now succeeded by the parks department). Statute 1899, c. 274, § 1, gave to that board "the custody, care and control of all lands owned by the city" in a territory so defined as to include the Chestnut Hill Reservoir lands and authorized the board to "take by purchase or otherwise such other lands within said boundary not owned by the Commonwealth, as said board with the approval of the mayor may deem desirable for park purposes . . . . [The board] shall have the same powers over any lands placed or taken under the custody, care and control of said board by authority of this act, as if said lands had been taken by said board by the exercise of the right of eminent domain, given by . . . [St. 1875, c. 185, as amended or added to]." Section 3 provides that the board "when authorized by the city council may sell any lands owned by the city, within the boundaries aforesaid, on such terms as . . . [the] board with the approval of the mayor may deem proper, and shall use the proceeds thereof in payment for any lands taken for park purposes under this act."

The plaintiffs contend that St. 1899, c. 274, "included a conveyance of the land" sufficient to satisfy the requirement of G. L. c. 214, § 3 (11). We disagree. Statute 1899, c. 274, made the land park land and placed it in the custody, care and control of the park commissioners. This exercise of the undoubted power of the General Court over a munici-

pality and its property cannot be tortured into a "gift or conveyance" and it is inconsequential whether the purpose was "a specific purpose . . . in trust or otherwise." See *Loomis* v. *Boston,* 331 Mass. 129, 131–132; *Brooks* v. *Boston,* 334 Mass. 285. Compare *Clark* v. *Mayor of Gloucester,* 336 Mass. 631, 633.

2. This park land may be disposed of only on specific legislative authorization. *Lowell* v. *Boston,* 322 Mass. 709, 730, and cases cited. *Loomis* v. *Boston,* 331 Mass. 129, 132. There being no other statute giving authority the only authorization is in St. 1899, c. 274, § 3.

The Attorney General is the proper public officer to protect the general public interest in this land. G. L. c. 12, § 3. It is an interest similar to that which he is expressly authorized to protect by G. L. c. 214, § 3 (11). It has been "generally held . . . that, in the absence of a statute, his authority . . . [to protect the public interest] is restricted to the abatement of public nuisances . . . and to the protection of the public interest under charitable trusts." *Attorney Gen.* v. *Trustees of Boston Elev. Ry.* 319 Mass. 642, 653. See *Attorney Gen.* v. *Department of Pub. Util.* 342 Mass. 662, 665–666. We see no reason, however, for applying such a restrictive rule in this case. For examples of the power of the Attorney General to institute mandamus proceedings to vindicate a public right see *Attorney Gen.* v. *Suffolk County Apportionment Commrs.* 224 Mass. 598, 610; *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 29–30. We need not determine whether the plaintiffs, having no rights under G. L. c. 40, § 53 (*Lynch* v. *Cambridge,* 330 Mass. 308; *Clark* v. *Mayor of Gloucester,* 336 Mass. 631, 632), or under G. L. c. 214, § 3 (11), might, nevertheless, institute proceedings to require the Attorney General to act. See *Brewster* v. *Sherman,* 195 Mass. 222, 224; *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, 92–93; *Sears* v. *Treasurer & Recr. Gen.* 327 Mass. 310, 314–315, and cases cited; *Concord* v. *Attorney Gen.* 336 Mass. 17, 27; *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 18; *Lamson* v. *Secretary of the Commonwealth,* 341 Mass. 264,

267–268.   See also *Sharpe* v. *Registrars of Voters of North-ampton,* 342 Mass. 620, 621.   That the plaintiffs as citizens could not act alone is indicated by *Kelley* v. *Board of Health of Peabody,* 248 Mass. 165, 169, *Povey* v. *School Comm. of Medford,* 333 Mass. 70, 71–72, *Berry* v. *Quincy,* 334 Mass. 703, and *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 57. See, as to G. L. c. 231A, *Burnes* v. *Metropolitan Dist. Commn.* 325 Mass. 731, 735.

This is an appropriate case for a declaratory decree under G. L. c. 231A.   By § 9 the purpose of that statute "is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations," and the statute is to be "liberally construed and administered."   *City Manager of Medford* v. *Civil Serv. Commn.* 329 Mass. 323, 331.   See *Wakefield* v. *Attorney Gen.* 334 Mass. 632.

There is an actual controversy (G. L. c. 231A, § 1) between the city and its parks department on the one hand and the Attorney General representing all the public.   All persons "who have or claim any interest which would be affected" (§ 8) are parties.

A possible purchaser of the land has no right to be heard on this issue of statutory construction.   Compare *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370; *S. C., ante,* 488.   The bill of complaint asks for a declaration under G. L. c. 231A, § 6, whether the purchase and sale agreement[1] is in violation of St. 1899, c. 274.   This reference to the agreement does not make the proposed purchaser a necessary party.   The purchaser has acquired no rights, legal or equitable, if the officials are without authority.   We need not pause to determine the discretionary power of the court to allow the purchaser to intervene.   It has not sought to be heard and no one has contended that it should be.

---

[1] This provides for the sale of the land to The Turner Associates Trust for $175,000 and that the seller obtain the written approval of the mayor and the written authorization of the city council, the elimination of height restrictions and delivery of a deed within ninety days after the approval of final plans by an appropriate municipal agency or agencies unless the buyer should request an earlier date.

The bill of complaint, having in effect been adopted by the Attorney General, may be maintained as a bill brought by him under G. L. c. 231A, and for injunctive relief.

3.   The construction, in the final decree, of St. 1899, c. 274, § 3, is correct except that, by virtue of the express limitation of § 1, the "other land to be added to the said park area" must be some other land "within said boundary not owned by the Commonwealth." The statute, in § 3, provides that the proceeds of the sale are to be used as "payment for any lands taken for park purposes under this act."

The act is to be construed in the light of its dominant purpose. We reject the suggestion that the limitation is only on the use of the proceeds. The city may not sell the land now and hold the proceeds indefinitely pending the opportunity, which may never come, to replace the land within the stated boundaries.

We reserve such questions as whether the purchase at a lesser sum of land which may reasonably be deemed adequate to replace that sold would comply with the statute, or how to dispose of any balance of the sale price after such purchase.

We think the statute did not limit the city to making only initial adjustments in the park area.

4.   The final decree is to be modified to declare the construction of St. 1899, c. 274, in accordance herewith and to give conforming injunctive relief.

*So ordered.*