TOWN OF BROOKLINE *vs.* METROPOLITAN DISTRICT COMMISSION. (and a companion case).

Suffolk. February 6, 1970. — May 5, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Public Land. Parks. Way*, Public: taking. *Eminent Domain*, Validity of taking, Taking of property already in public use. *Certiorari.*

Certiorari lies to determine the validity of the laying out of a public way. [439]

Land appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end. [439]

An order of taking by eminent domain by the Metropolitan District Commission for a roadway of certain parkland held by a town was invalid where the statutes purportedly authorizing the commission to take the land did not explicitly identify the parkland to be taken. [440-441]

BILL IN EQUITY and PETITION for writ of certiorari filed in the Superior Court on March 28, 1969.

The cases were reported by *Roy*, J., without decision.

*John M. Reed* (*Phillip Cowin*, Town Counsel, with him) for the plaintiff.

*Daniel J. Johnedis*, Assistant Attorney General, for the defendant.

WILKINS, C.J. The town brings a bill in equity and a petition for a writ of certiorari, both attacking as invalid an order of taking of certain parkland of the town made by the commission (M.D.C.) on March 20, 1969. The parties filed a "consolidated agreed statement of facts," which is self-described as intended "to have the effect of a case stated." The cases are reserved and reported by a judge of

the Superior Court, the equity suit upon the pleadings and the agreed facts, and the certiorari case upon the petition, the commission's return of the proceedings of March 20, 1969, and the agreed facts.

We first summarize the pleadings in the equity suit. The land which is described in the taking was acquired by the town for park purposes by purchase and by eminent domain between 1881 and 1894 pursuant to St. 1875, c. 185. In St. 1890, c. 339, the General Court redrew the boundary lines between Brookline and Boston, and Boston conveyed to Brookline certain land which Boston had taken under St. 1875, c. 185, to be held for park purposes. As a result of the foregoing statutes and the original acquisitions, title vested in the town subject to the jurisdiction of its board of park commissioners, now its park and recreation commission, and is still so held. All these allegations are denied in the answer.

The bill in equity alleges that the order of taking was beyond the authority and jurisdiction of the defendant for the following reasons:

(a) The taking was ostensibly made pursuant to G. L. (Ter. Ed.) c. 92, § 35. Taking and acquisition of lands under that section is expressly regulated by G. L. (Ter. Ed.) c. 92, § 80, which provides: "For the purpose of carrying out section thirty-five, the commission may take or acquire, in fee or otherwise, on behalf of the commonwealth, by purchase, gift, devise, or eminent domain under chapter seventy-nine, any land or easements or interests in land within the metropolitan parks district, although the land so taken, or any part thereof, be already a public way; provided, that the concurrence of the city council in Boston for Suffolk county or the concurrence of each other county or city or town outside of Suffolk county, wherein any portion of any public way, land or rights in land is taken by eminent domain, be obtained to the taking of said portion by vote of its county commissioners, city council or selectmen, respectively." The concurrence of the board of selectmen of Brookline was never obtained.

The answer alleges that the taking of March 20, 1969, was made under St. 1956, c. 718, and St. 1967, c. 616, neither of which requires assent of the town's selectmen or park and recreation commission, and that "the statutes referred to in the petition do not limit this 'taking.'"

(b) Under St. 1875, c. 185, § 16, parklands under the jurisdiction of the town's board of park commissioners were made "subject to similar provisions to those hereinbefore made regarding parks in Boston." Under St. 1875, c. 185, § 13, "No street or way, and no steam or horse railroad shall be laid out over any portion of any park located under this act, except at such places and in such manner as said [Boston] board shall approve." The functions of the town's board of park commissioners devolved upon its park and recreation commission by St. 1963, c. 13. About December 12, 1966, the latter board voted to approve a certain plan of the M.D.C. known as Scheme C, for reconstruction of the Jamaicaway, Arborway, and Riverway, "with the understanding that the park and recreation commission would be consulted concerning detailed plans." On March 10, 1969, the foregoing vote was rescinded by the park and recreation commission. The rescission was served on the M.D.C. prior to the recording of the taking order of March 20, 1969.

The answer admits that the park board voted as alleged, and that at the time the M.D.C. agreed to go along with the request of the park board and so advised. The answer denies that the vote was rescinded, but alleges that "if some action was taken, purporting to rescind, that said action was of no legal effect."

(c) The town's land in question is held as parkland under G. L. c. 45 and is in the control of its park and recreation commission. General Laws (Ter. Ed.) c. 79, § 5, provides in part: "No portion of the land taken for or held as a park by a town under chapter forty-five shall be taken or used for a public way, canal, railroad or railway, or for altering or widening the same, without the approval of the board having control" of the same. The park and recrea-

tion commission has given no approval under G. L. c. 79, § 5.

(d) The taking was also made under St. 1956, c. 718, § 6 of which provides that the M.D.C. may on behalf of the Commonwealth take by eminent domain under G. L. c. 79 such public or private lands, cemeteries, public parks or reservations, or parts thereof or rights therein, and public ways as "it may deem necessary for carrying out the provisions of this act . . . ." Any taking by the M.D.C. if subject to St. 1956, c. 718, is nevertheless also subject to the restrictions contained in G. L. c. 92, § 80, St. 1875, c. 185, § 13, and G. L. c. 79, § 5. Chapter 718 is not sufficiently definite to effect the diversion of use sought to be accomplished in that it does not identify the land to be transferred.

(e) Under St. 1956, c. 581, § 1, the M.D.C. was authorized to take over the care, control, and maintenance of Riverdale Parkway Drive, a park drive within the parklands of the town, from Chestnut Street to Washington Street, Brookline, provided that the transfer should become effective upon approval by the board of park commissioners. On October 16, 1961, the park commissioners gave approval to such transfer subject to seven conditions. The conditions were not fulfilled, and the M.D.C. never assumed care, control, and maintenance of the drive. On March 10, 1969, the park and recreation commission voted to rescind its vote of October 16, 1961. A copy of the rescission was served on the M.D.C. prior to the recording of the taking order of March 20, 1969.

The bill contains allegations of threatened irreparable damage to parklands and to ways; that the town is under a duty to protect the parklands; that public lands devoted to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation authorizing the diversion and identifying the land to be transferred; and that there is here no sufficient indication of legislative intention to divert such use. The allegations of fact are denied in the answer.

The answer further alleges that the present roadway is not adequate for the needs of the motoring public; that it is

dangerous and requires immediate widening and relocation; and that the taking was made in consideration of the foregoing.

The factual allegations of the petition for a writ of certiorari closely resemble those of the equity suit. We take note of a contention of the defendant asserting that it was performing an administrative act and that certiorari will not lie. This contention must be rejected. It has often been decided that laying out a public way involves a quasijudicial act to determine the validity of which certiorari will lie. *Parks* v. *Mayor and Aldermen of Boston,* 8 Pick. 218, 225. *Dwight* v. *City Council of Springfield,* 4 Gray, 107, 110. *Dube* v. *Mayor of Fall River,* 308 Mass. 12, 14, and cases cited. Nichols on Eminent Domain (Rev. 3d ed.) § 25.3 (1).

The broad question presented to us is the propriety of a diversion of parkland held by the town to a different use by a State agency. In the leading case of *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, the city held parkland, known as the Back Bay Fens, which it had acquired by authority of St. 1875, c. 185. By St. 1911, c. 540, the park commissioners of Boston were authorized to permit the erection of a building for a high school. The building which it was proposed to erect was to be used not only for the high school but for the administrative offices of the school committee and of the school house commission. Taxpayers secured an injunction against spending money or incurring obligations for that purpose. At pages 591–592, it was said by Chief Justice Rugg, "Land appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end . . . [citing cases]. The policy of the Commonwealth has been to add to the common law inviolability of parks express prohibition against encroachment by buildings, highways, steam or street railways. . . . The firmly settled and frequently declared policy of the Legislature heretofore has been to preserve public parks free from intrusion of every kind which would interfere in any degree with their complete use for this public end. It cannot be assumed that this policy is to be lightly thrown aside."

The principle that land appropriated to one public use cannot be diverted to another inconsistent use without plain and explicit legislation to that end has been well established in our decisions. *Byfield* v. *Newton*, 247 Mass. 46, 57. *Bauer* v. *Mitchell*, 247 Mass. 522, 528. *Needham* v. *County Commrs. of Norfolk*, 324 Mass. 293, 296. *Jacobson* v. *Parks & Recreation Commn. of Boston*, 345 Mass. 641, 644. *Commonwealth* v. *Massachusetts Turnpike Authy.* 346 Mass. 250, 254. *Gould* v. *Greylock Reservation Commn.* 350 Mass. 410, 419. *Robbins* v. *Department of Pub. Works*, 355 Mass. 328, 330.

The statutes cited in the order of taking are St. 1956, c. 718, "An Act providing for an accelerated highway program"; St. 1967, c. 616, entitled, "An Act relative to the accelerated highway program"; and G. L. c. 92, § 35. The material portion of these first two statutes is found in St. 1956, c. 718, § 6, which provides, "The department [of public works] and the [metropolitan district] commission may, on behalf of the commonwealth, take by eminent domain under chapter seventy-nine of the General Laws, or acquire by purchase or otherwise, such public or private lands, including . . . cemeteries, public parks or reservations . . . and public ways as it may deem necessary for carrying out the provisions of this act." In G. L. c. 92, § 80, the eminent domain provision for § 35, it is provided, "the commission may take . . . on behalf of the commonwealth, by . . . eminent domain under chapter seventy-nine, any land . . . within the metropolitan parks district . . . ."

These statutes on which the M.D.C. relies do not meet the standards of "plain and explicit legislation" required by our decisions. An essential ingredient in such legislation is that it explicitly identify the public land to be taken. In the *Robbins* case, at page 331, it was said, "We think it is essential to the expression of plain and explicit authority to divert parklands, Great Ponds, reservations and kindred areas to a new and inconsistent public use that the Legislature *identify the land* and that there appear in the legislation not only a statement of the new use but a statement or

recital showing in some way legislative awareness of the existing public use" (emphasis supplied). Thus, the most basic requirement that the parkland to be taken be specifically identified has not been met. See *Sacco* v. *Department of Pub. Works*, 352 Mass. 670, 672; *Commonwealth* v. *Massachusetts Turnpike Authy*. 346 Mass. 250, 253.

In the equity suit a declaration is made that the order of taking is invalid, and the defendant is to be enjoined in accordance with the prayers of the bill.

In the petition for a writ of certiorari the order of taking of March 20, 1969, is to be quashed.

*So ordered.*