EATON, J., dissenting.
 

 ¶ 40. I agree with the majority that the prior public use doctrine should not be applied to preclude condemnation of lands pursuant to a general condemnation statute in situations where the proposed use would not materially impair the prior use. As the majority reasons, doing so would undermine the goals of the condemnation statutes while doing nothing to further the purpose of the doctrine. I believe, however, that our adoption of a "compatible use" exception to the doctrine is contrary to our prior caselaw and that we should overrule that caselaw to the extent it is inconsistent with our holding today.
 

 ¶ 41. I also agree with the majority that the nature of the prior use-in this case a park dedicated for recreational or educational purposes-is not necessarily controlling but is a factor in determining whether the proposed use would materially impair the prior use. I would conclude, however, that granting an easement for a pressurized gas pipeline through a park dedicated to recreational or educational uses only, and giving the condemnor the discretion to restrict the Town's use of the land over which the easement runs, materially impairs the prior use such as to require specific legislative authorization for the condemnation.
 

 ¶ 42. In short, in my view, the terms of the easement as set forth by the Public Service Board would materially impair park land dedicated exclusively for recreational or educational purposes. Accordingly, I respectfully dissent.
 

 ¶ 43. My first departure from the majority opinion is on a relatively minor point. In my view, our prior caselaw concerning the prior public use doctrine adopted a general rule, without recognizing any exception, "that property already taken for a public use cannot be taken for another public use without legislative authority expressly given or necessarily implied."
 
 Rutland-Canadian R.R. v. Cent. Vt. Ry.
 
 ,
 
 72 Vt. 128
 
 , 133,
 
 47 A. 399
 
 , 400 (1900) ; see
 
 Vt. Gas Sys., Inc. v. City of Burlington
 
 ,
 
 130 Vt. 75
 
 , 77,
 
 286 A.2d 275
 
 , 276 (1971) (stating that plaintiff utility "could not, by its [general] powers of eminent domain, acquire a property interest" that had "already [been] dedicated to a public use" absent specific "legislative authorization");
 
 President & Fellows of Middlebury Coll. v. Cent. Power Corp. of Vt.
 
 ,
 
 101 Vt. 325
 
 , 336,
 
 143 A. 384
 
 , 388 (1928) ("[I]t is the well-settled law of this State that property already appropriated to a public use cannot be taken for another public use without legislative authority, either express or implied.");
 
 Vt. Hydro-Elec. Corp. v. Dunn
 
 ,
 
 95 Vt. 144
 
 , 149,
 
 112 A. 223
 
 , 225 (1921) ("It is the settled law of this State that property already legally appropriated to a public use cannot be taken for another public use without legislative authority expressly given or necessarily implied.").
 

 ¶ 44. To be sure, as the majority points out, on a couple of occasions our decisions have contained language suggesting that some incompatibility between the prior and proposed public uses might be an element of the doctrine. See
 
 Rutland-Canadian R.R.
 
 ,
 
 72 Vt. at 133
 
 ,
 
 47 A. at 400
 
 ("Authority given in general terms ... is not sufficient to authorize the taking for an
 
 inconsistent
 
 purpose, of property already devoted to a public use and necessary for the purpose to which it is devoted." (emphasis added));
 
 Cent. Vt. R.R. v. Town of Royalton
 
 ,
 
 58 Vt. 234
 
 , 238,
 
 4 A. 868
 
 , 871 (1886) ("It is settled law that property already taken and held for public use by a corporation
 
 cannot be interfered with
 
 by another corporation for other public use, without legislative authority to that end." (emphasis
 added)). But our vague and unexplained insertion of such language in those two cases is not the equivalent of adopting a compatible use exception to the doctrine in situations where the proposed use does not materially impair the prior use. See
 
 Minn. Power & Light Co. v. State
 
 ,
 
 177 Minn. 343
 
 ,
 
 225 N.W. 164
 
 , 166 (1929) (stating that prior public use doctrine generally does not apply "where the second use does not materially or seriously interfere with the first use,
 
 or
 
 , where the second use is not inconsistent and the two uses may be enjoyed together without serious injury to or interference with the first use" (emphasis added)). Our mostly ancient caselaw on this subject essentially laid out a broad rule without exception. Rather than call this a case of first impression, we should overrule that caselaw to the extent it is inconsistent with our adoption today of a compatible use exception that precludes application of the doctrine when the proposed use will not materially impair the prior use.
 

 ¶ 45. Applying the exception to this case, I would rule that the proposed use materially impairs the prior use. Consider the nature of the use. A private citizen, Dora Geprags, devised her property to the Town of Hinesburg subject to a restrictive covenant running with the land in perpetuity stating "that the property decreed hereby shall be used
 
 only
 
 as a public park or school for recreational or educational purposes, and the Town of Hinesburg shall properly maintain and care for the property decreed hereby." (Emphasis added.) Cf.
 
 City of Wilmington v. Lord
 
 ,
 
 332 A.2d 407
 
 , 409 (Del. Super. Ct. 1975) (distinguishing case relied upon by condemnor by noting that, in determining that proposed use would not destroy or injure prior use of property held in trust, court relied upon fact that covenant in deed required property to be used " 'for the purpose of a park' rather than 'for the purpose of a park only' "). Recognizing that it lacked the authority to grant Vermont Gas Systems, Inc. (VGS) easement rights that would violate the devise's restrictive covenant, the Town initially agreed not to oppose VGS's condemnation of a pipeline easement through the park, and eventually agreed in a revised stipulation to VGS's condemnation of the easement based in part on VGS paying the Town $250,000. In short, after accepting Ms. Geprags's gift subject to its restrictive covenant, the Town then accepted a quarter of a million dollars in return for agreeing to VGS's condemnation of part of the property in a manner that violated the restrictive covenant.
 

 ¶ 46. Considering the prior public use of the subject property, there is little doubt that the proposed use will materially impair that prior use. See
 
 Material
 
 , Black's Law Dictionary (10th ed. 2014) (having "such a nature that knowledge of the item would affect a person's decision-making");
 
ids="8033462" index="97" url="https://cite.case.law/a2d/332/407/">
 id.
 

 Impair
 
 ("diminish[ing] the value of"). As evidenced by the exclusionary language of the Board-approved easement, the installation and maintenance of a gas pipeline is entirely dissimilar to and inconsistent with the current use of the property as a park, and most particularly to its dedicated use for recreational or educational purposes only. Were the two uses not so incompatible, the language in the VGS easement restricting the Town's use of the park would not have been necessary. Importantly, the impact of the proposed use must be considered based on the terms of the easement established by the Board. See
 
 Farrell v. Vt. Elec. Power Co.
 
 ,
 
 2012 VT 96
 
 , ¶ 11,
 
 193 Vt. 307
 
 ,
 
 68 A.3d 1111
 
 ("[T]he terms of a condemnation easement described in the order granting the easement define the easement holder's authority to use the condemned property.").
 

 ¶ 47. Under the terms set forth by the Board, VGS has significant discretion in using the fifty-foot wide, 2000-foot long
 easement dissecting the park and overlaying the pressurized gas pipeline. Among other things, pursuant to the Board's order, the Town "shall not prevent, or interfere with, [VGS's] use of the Easement Area" unless otherwise allowed by the order, and specifically "shall not unreasonably interfere with [VGS's] pipeline within the Easement area" through the "installation and use of trails, unpaved roadways, and utilities." Additionally, the Town "shall consult with [VGS] and obtain written consent before beginning any construction on any trails, unpaved roadways, and utilities within the Easement Area, which consent [VGS] shall not unreasonably withhold, condition, or delay." Furthermore:
 

 The Town shall not construct, install, or permit the construction or installation of any structures or objects of any kind upon or under the surface of the Easement Area, shall not store or place any objects within the Easement area, and shall not change the elevation of the Easement Area without [VGS's] prior written agreement or approval, which [VGS] may withhold or condition in its reasonable discretion.
 

 Regarding VGS's installation and maintenance of the pipeline, VGS is required to use the nonintrusive Horizontal Directional Drilling (HDD) method to repair, replace, reconstruct, or remove the pipeline, but only "to the extent feasible."
 

 ¶ 48. Given the scope of the easement as set forth by the Board, the proposed use will most certainly impair the prior use. Cf.
 
 Town of Brookline v. Metro. Dist. Comm'n
 
 ,
 
 357 Mass. 435
 
 ,
 
 258 N.E.2d 284
 
 , 286 (1970) (in denying general condemnation of parkland, noting common-law inviolability of parks and legislature's declared policy "to preserve public parks free from intrusion of every kind which would interfere in any degree with their complete use for this public end");
 
 Minn. Power & Light Co.
 
 ,
 
 225 N.W. at 167
 
 ("It seems reasonably clear that the [power] line [involving removal of foliage and erection of four or five towers] is inconsistent with the purpose of maintaining the land as a park, and that it will materially interfere with the use of the park, especially so in view of the careful provisions made by the Legislature for preserving the park land from injury or interference."). The impact of the proposed use on the prior use is material due in part to VGS's discretionary authority over use of the land within the easement, particularly its discretion to preclude the Town from using the land as intended. It is also material in the sense that, had it been anticipated, it may well have precluded creation of the prior use in the first place, given the donor's express condition that the property be used exclusively for recreational or educational purposes. Indeed, I fear that our decision today could potentially cause testators to think twice about donating lands for public use knowing that their desires regarding restrictions on the use can be so easily ignored through general condemnation proceedings. Cf.
 
 President & Fellows of Middlebury Coll.
 
 ,
 
 101 Vt. at 332, 336
 
 ,
 
 143 A. at 387, 389
 
 (stating that devise of mountain forest land to be preserved "in its virgin and primeval state" for benefit of public cannot be taken in general condemnation proceedings).
 

 ¶ 49. The terms of the easement foreclose use of the subject property exclusively for recreational and educational purposes, including any future construction of typical recreational and educational uses such as bleachers, rinks, restrooms, or school buildings within the easement area. The majority notes the relatively small size of the easement area compared to the overall size of the subject property and the fact that the Town has no existing plans to erect structures within the park or to construct new trails or roads that would intersect with the easement. The majority supports the latter point by citing a case that
 stands for an entirely different point: in situations where land is held with an expectation of future public use, that future public use must be "reasonably foreseeable" and not "a mere naked possibility."
 
 City of New Haven v. Town of E. Haven
 
 ,
 
 35 Conn.Supp. 157
 
 ,
 
 402 A.2d 345
 
 , 351 (1977).
 

 ¶ 50. This is the same issue addressed in
 
 Dunn
 
 , where this Court held that "it is not necessary that the property be actually in use for the public purpose to exempt it from the [condemnation] proceeding."
 
 95 Vt. at 149
 
 ,
 
 112 A. at 226
 
 . We emphasized in
 
 Dunn
 
 that, notwithstanding a "liberal consideration" of future and existing needs, "property held for future use" will not be exempt from condemnation based upon "the mere possibility" of future public use but rather a "[r]easonable expectation of future needs is required to protect the property from condemnation."
 
 Id.
 
 at 150,
 
 112 A. at
 
 226 ; see 1A J. Sackman, Nichols on Eminent Domain § 2.17[5], at 98-99 (3d ed. 2007) (citing
 
 Dunn
 
 , among other cases, for principle that "bare possibility of future use is insufficient to remove property from the operation of the power to condemn"). Thus, the general rule is that property devoted to a public use is exempt from condemnation for a different public use absent specific legislative authorization with respect to land "in immediate and necessary" public use "or" land acquired for a public purpose but "held in reasonable anticipation of its future needs, with a
 
 bona fide
 
 intention of using it for such purpose within a reasonable time."
 
 Dunn
 
 ,
 
 95 Vt. at 149-50
 
 ,
 
 112 A. at 226
 
 .
 

 ¶ 51. In this case, the subject property is not being held in anticipation of future public use; rather, it is currently in public use as a park pursuant to a devise restricting its use in perpetuity solely for recreational or educational purposes. VGS's fifty-foot wide, 2000-foot long easement for a gas pipeline through the property not only immediately impacts the property's current use as a park but also materially interferes with its potential future use within the easement corridor for recreational or educational purposes, for which the property was exclusively dedicated.
 

 ¶ 52. The majority also reasons that the subject property already has an easement for power lines on it in a different location and that the likelihood of using intrusive methods for maintaining or repairing the underground pipeline are remote. Regarding the first point, the other easement was already on the property when it was devised to the Town for a public purpose; thus, to the extent the existence of the prior easement is relevant to the question presented here, it indicates even a greater likelihood that placing another easement in a different location on the property would materially impair the public use. Cf.
 
 Minn. Power & Light Co.
 
 ,
 
 225 N.W. at 167
 
 (reasoning that allowing easement for power line through park would materially interfere with existing public use because park already had other utility and transportation lines running through it and adding further servitudes "might well lead to its final extinction as a public park"). The preexisting power line easement is a factor supporting a material interference being created by virtue of the VGS easement, not a factor supporting its absence as the majority contends.
 

 ¶ 53. The majority's second point does not respond to the fact that the pipeline easement will forever materially restrict use of a portion of the park dedicated exclusively for recreational or educational purposes. The cases that the majority relies upon are wholly distinguishable on the facts and law and thus do not support its resolution of this case. See
 
 Ga. S. & Fla. Ry. v. State Rd. Dep't
 
 ,
 
 176 So.2d 111
 
 , 113 (Fla. Dist. Ct. App. 1965) (noting evidence demonstrating that proposed widening of highway would not interfere with railway's
 drainage ditches and in fact would be beneficial to railway in certain places);
 
 Lake Cty. Parks & Recreation Bd. v. Ind.-Am. Water Co.
 
 ,
 
 812 N.E.2d 1118
 
 , 1122-24 (Ind. Ct. App. 2004) (holding that installation of easement for water main would only temporarily disrupt use of land for recreational hiking and bike path and thus would not interfere with public use of property "to such an extent as is tantamount to [its] destruction" (quotation omitted)).
 

 ¶ 54. As VGS conceded during oral argument, it had the burden to demonstrate that its proposed condemnation of the subject property would not materially impair the prior public use of that property. See
 
 City of Las Cruces v. El Paso Elec. Co.
 
 ,
 
 1998-NMSC-006
 
 , ¶ 11,
 
 124 N.M. 640
 
 ,
 
 954 P.2d 72
 
 (noting trial court's conclusion that condemnor "had the burden of proof" as to whether its "proposed condemnation would not materially impair the public use of ... property sought to be condemned" (quotation omitted)); see also
 
 City of New Haven
 
 ,
 
 402 A.2d at 350
 
 (stating longstanding rule in state "that the authority to take property by eminent domain will be strictly construed in favor of the owner and against the condemnor"). The material facts in this case are essentially undisputed. Whether, considering those facts, the proposed public use will materially impair the prior public use is a question of law.
 
 Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.
 
 ,
 
 258 S.W.3d 613
 
 , 618 (Tex. 2008). In my view, the reasonable inferences and conclusions to be drawn from the undisputed facts demonstrate that the installation and maintenance of a permanent gas pipeline, coupled with the attendant use restrictions on the park imposed by the Board in the VGS easement, will materially impair the public's use of Geprags Park for recreational and educational purposes.
 

 ¶ 55. Accordingly, I would deny VGS's petition to condemn an easement through the park for a gas pipeline without addressing the question of its necessity.