344 Mass. 709                                                709

New York Central Railroad *v.* New England Merchants National Bank.

---

New York Central Railroad Company *vs.* New England Merchants National Bank of Boston & another.

Suffolk.   May 11, 1962. — July 6, 1962.

Present: Spalding, Williams, Whittemore, Cutter, & Spiegel, JJ.

*Railroad,* Mortgage.   *Mortgage,* By railroad.

Where an indenture of mortgage to trustees was given by a railroad to secure an issue of bonds at a time when previously issued, unsecured bonds were outstanding, the provision of G. L. c. 160, § 47, that the indenture should also secure the preëxisting bonds "on equal terms with" the new bonds required that the indenture should continue in force as security for the preëxisting bonds not only until the new bonds were paid in full but also until the preëxisting bonds were paid in full. [713–714]

In the circumstances, trustees holding an indenture of mortgage given by a railroad could not be required to discharge it as void prior to payment of certain bonds of the railroad, nor was a decree precluded declaring that the indenture should remain in force as security for such

bonds until they were paid in full, by a provision of the indenture in effect that their payment should not be a condition precedent to discharge of the indenture if the trustees were furnished with an opinion of counsel, "satisfactory to" the trustees, that payment was not required by law as a condition precedent, where, although such an opinion was furnished to the trustees, they chose not to rely on it and refused to discharge the indenture without a judicial determination of the matter. [714–716]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on March 13, 1962.

The suit was reserved and reported by *Williams, J.,* without decision.

*Richard Wait* for the plaintiff.

*Alfred Gardner* (*Daniel O. Mahoney* with him) for the defendants.

SPIEGEL, J.   By this bill in equity the New York Central Railroad Company (into which the Boston and Albany Railroad Company has been merged) seeks a decree declaring that an Indenture of Trust and Mortgage (hereinafter referred to as the indenture) of the Boston and Albany Railroad Company (hereinafter referred to as the Company), executed and delivered on April 1, 1935, to The New England Trust Company (converted to a national banking association under the name of New England National Bank of Boston and then consolidated with The Merchants National Bank of Boston under the name of New England Merchants National Bank of Boston) as trustee to secure certain bonds, is void and an order for the execution and delivery to the plaintiff of instruments discharging the indenture.   The defendant Chamberlin is an individual cotrustee under the indenture.   The suit is reported without decision upon the bill and answer.

At the time the indenture was executed there were outstanding ten issues of debenture bonds, aggregating $31,700,000 face amount.   Of these, there are now outstanding $3,627,000 face amount 5% Refunding Bonds issued October 1, 1913, due October 1, 1963, of which $959,000 face amount are held in the plaintiff's treasury, and $5,700,000 face amount 4¼% Improvement Bonds due August 1, 1978,

344 Mass. 709                                               711

New York Central Railroad *v.* New England Merchants National Bank.

of which $327,000 face amount are held in the plaintiff's treasury.

The indenture contained the following pertinent provisions:

"Whereas the Company has similarly determined to secure further by this Indenture all bonds, notes and other evidences of indebtedness previously issued and now outstanding . . . of which the Company is the maker, or which it has assumed through merger or consolidation with the original and principal obligor, except those outstanding while and so long as the same are, in accordance with any promise contained therein, secured by another direct mortgage, but all only . . . to the extent that, and so long as, the Company is required, by the laws of The Commonwealth of Massachusetts now in force, to secure the same by this Indenture on equal terms with any other Bonds to be issued under and secured by this Indenture . . . ."

Article 13 entitled "Defeasance" provides in part as follows: "Section 1. This Indenture shall become void: (1) if the Company shall . . . deliver . . . to the Trustee, for cancellation, all the Bonds [meaning only those bonds issued under the indenture] . . . forthwith upon such delivery; . . . provided, however, that if by law . . . the Company could not be entitled to a discharge of this Indenture upon payment in full of all Bonds . . . then . . . [condition] (1) . . . instead of having effect as above written shall have effect as if instead of the word 'Bonds' . . . there had been written the words 'Secured Obligations' [a defined term which includes all obligations secured by the indenture] . . .; provided, however, that . . . no provision of this Article 13 shall require the presentation of the Preexisting Obligations [a defined term meaning all bonds, notes, or other evidences of indebtedness issued prior to the indenture] . . . for cancellation . . . if the Trustee shall be furnished with an Opinion of Counsel satisfactory to it that such presentation . . . is not required by law as a condition precedent to the discharge of this Indenture."

The indenture secured all the preëxisting obligations of the Company as well as the bonds issued thereunder be-

712                                                  344 Mass. 709

New York Central Railroad *v.* New England Merchants National Bank.

cause of the statutory mandate of G. L. c. 160, § 47,[1] that such mortgage shall secure all of the then outstanding and theretofore unsecured bonds, notes and other evidences of indebtedness "on equal terms" with the bonds issued under the indenture.

On November 9, 1936, the Company, through its duly authorized agents, The First Boston Corporation, Whiting, Weeks & Knowles, and R. L. Day & Co., offered for sale $500,000 face amount of the issue of $5,700,000 Improvement Bonds, and these bonds were sold in due course.

The above named agents issued a bond circular, dated November 9, 1936, which contained the following representations: "These Bonds were issued in 1928 as unsecured obligations of the Company, but the Company has since executed its Indenture of Trust and Mortgage, dated April 1, 1935, to The New England Trust Company, Trustee . . . . By the express terms of said Indenture . . . these Bonds are secured thereby equally with all other bonds, notes and other evidences of indebtedness of the Company outstanding at the date of the delivery of said Indenture and with all bonds issued and to be issued thereunder. In the opinion of counsel these Bonds are secured by a first mortgage . . . on the main line of the Company from Boston, Massachusetts, to Rensselaer, New York . . . ."

The bonds issued under the indenture were paid and the Company requested the trustees to cancel the indenture. The trustees "being in doubt as to whether by law the Company could be entitled to a discharge of the Indenture upon payment in full of all of the bonds [issued thereunder] refused to cancel the Indenture or to execute a release and discharge thereof." Thereafter, in accordance with the provisions of article 13 of the indenture, an opinion of counsel was furnished to the trustees which stated: "[I]f and when all Bonds outstanding under the Indenture and

---

[1] Section 47 of G. L. c. 160 provides in pertinent part as follows: "Any mortgage executed by a railroad company shall secure, on equal terms with any other indebtedness secured by such mortgage, all bonds, notes and other evidences of indebtedness previously issued and then outstanding of which such corporation is the maker or which it has assumed through merger or con-

344 Mass. 709 713

New York Central Railroad *v.* New England Merchants National Bank.

accrued interest thereon and all other charges secured by the Indenture have been paid in full, the presentation of the Pre-existing Obligations canceled or for cancellation, or the payment or provision for payment thereof, is not required by law as a condition precedent to the discharge of the Indenture.'' Subsequently the trustees were again requested to execute a release and discharge of the indenture and the trustees have refused to do so.

The underlying issue of the case involves the interpretation of the language of G. L. c. 160, § 47, which provides that ''[a]ny mortgage executed by a railroad company shall secure, on equal terms with any other indebtedness secured by such mortgage,'' all outstanding unsecured obligations.

It is the duty of this court to ascertain the legislative intention ascertained from the language used, the evil to be remedied, and the object to be accomplished by the enactment. *Brown* v. *Robinson,* 275 Mass. 55, 57. *Lehan* v. *North Main St. Garage, Inc.* 312 Mass. 547, 550. *Meunier's Case,* 319 Mass. 421, 423. *Appleton* v. *Massachusetts Parking Authy.* 340 Mass. 303, 309.

It is clear from the statutory language requiring a railroad company to ''secure, on equal terms with any other indebtedness secured by such mortgage,'' all outstanding unsecured obligations, that the Legislature intended to prevent any preference of the bonds issued under the mortgage over the previously issued unsecured obligations. If, as the plaintiff contends, the mortgage was to be discharged when the bonds issued thereunder were paid in full, the preëxisting obligations still outstanding would be deprived of their security. The existence of security for the previously issued obligations would be wholly dependent upon the existence of the new bonds. We do not believe this constitutes security ''on equal terms'' within the meaning of the statute.

solidation with the original and principal obligor, except outstanding bonds, notes or other evidences of indebtedness while and so long as the same are, in accordance with any promise contained therein, secured by another direct mortgage; but the term 'mortgage' as used herein shall not include or apply to the pledge of securities deposited with a trustee as collateral to secure the repayment of a loan.''

The new bonds were secured by the mortgage until they were paid in full. We are of opinion that the preëxisting obligations are entitled to the same protection.

An argument is advanced on behalf of the plaintiff that when the new bonds were paid there was no longer any need to continue security for the preëxisting obligations. This ignores the point that the Legislature may have had in mind that the preëxisting obligations can be traded on the bond market after the execution of the indenture. Subsequent purchasers have a right to rely on the mortgage security and the right to assume that the mortgage would not be discharged prior to payment of the bonds which they purchase. The Company itself in its offering of the $4\frac{1}{4}\%$ Improvement Bonds represented that the preëxisting bonds "are secured . . . equally with all other bonds . . . outstanding at the date of . . . delivery" of the indenture.

We do not believe the Legislature intended that the purchasers of such preëxisting bonds were to be deprived of their security when the bonds issued under the indenture were paid in full.

The plaintiff also argues that, since the trustees were furnished with an opinion of counsel that the payment of preëxisting obligations was not required before the mortgage could be discharged, the indenture became void by its terms and the trustees were required by those terms to give a discharge. In furtherance of this contention the plaintiff asserts that, if in fact the law requires the mortgage to remain in force until the preëxisting obligations are paid, then it follows that the clause in the indenture providing for its discharge upon the giving of the opinion of counsel violates the statute and renders the indenture void ab initio. We see no merit in this argument.

The indenture should be construed so as to give it effect as a rational business instrument and in a manner which will effectuate the intent of the parties.

"To ascertain and effectuate the intent of the parties as manifested by the words used and the object to be accomplished is the goal of all interpretations of written agree-

344 Mass. 709                                           715

New York Central Railroad *v.* New England Merchants National Bank.

ments." *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 473. *MacDonald* v. *Gough,* 326 Mass. 93, 96. See *Brackett* v. *Pitcher,* 296 Mass. 295, 297; *Berkel* v. *M. De Matteo Constr. Co.* 327 Mass. 329, 333.

The indenture was obviously intended to create a valid mortgage. Its several references to the requirements of the law of the Commonwealth manifest an intention to comply with those requirements.

We note that the indenture avoided fixing a definite termination date of the mortgage security regarding the preexisting obligations. It could have done so in unequivocal language. However, in lieu thereof, the indenture stated that the preëxisting obligations would be secured "to the extent that, and so long as, the Company is required, by the laws of The Commonwealth of Massachusetts . . . to secure the same . . . on equal terms with any other Bonds to be issued under and secured by this Indenture . . . ."

This indicates to us that in drafting the indenture counsel were uncertain as to the statutory requirements regarding the termination date of the mortgage security affecting the preëxisting bond obligations.

We interpret the provision for an opinion of counsel as an effort to meet this uncertainty. If, after the payment of the bonds issued under the indenture, counsel had been able to demonstrate to the satisfaction of the trustees that the uncertainty in the law had been resolved and that the continuance of the mortgage as security for the preëxisting obligations was not required, then it may be that the trustees could have discharged the mortgage. That we need not decide. However, the opinion rendered by counsel indicates that the uncertainty had not been resolved. If anything, it points to the contrary. We advert to the following statement in the opinion: "[O]ur investigation has not disclosed any enactment, decision, official report or other relevant material which sheds much light on the interpretation to be given the statutory requirement that a mortgage shall secure such preëxisting unsecured obligations 'on equal terms with any other indebtedness secured by such mort-

gage.' " The trustees, in any event, did not decide to rely upon the opinion of counsel. In the circumstances they were warranted in refusing to discharge the indenture without a judicial determination of the issue.

A decree is to be entered, (1) denying the plaintiff's request that the indenture be discharged by the defendants; (2) declaring that the indenture is in full force and effect as a valid existing first mortgage securing the outstanding $5,700,000 face amount of the Company's 4¼% Improvement Bonds due August 1, 1978, and the outstanding $3,627,000 face amount of the Company's 5% Refunding Bonds due October 1, 1963; and, (3) declaring that the indenture shall remain in full force and effect as a first mortgage securing said Improvement Bonds and Refunding Bonds, respectively, until such time as the indenture shall become void in accordance with the terms and conditions contained in Article 13 thereof, and the word "Bonds" as used in said Article 13 shall include said Improvement Bonds and Refunding Bonds.

*So ordered.*