COMMONWEALTH *vs.* MASSACHUSETTS TURNPIKE AUTHORITY.

Suffolk.     May 9, 1963. — June 20, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Massachusetts Turnpike Authority. Eminent Domain,* Authority for taking, Land of the Commonwealth, Massachusetts Turnpike Authority. *Commonwealth,* Real property, As party to a suit in equity. *Equity Pleading and Practice,* Parties. *Words,* "Use," "Public lands."

The Commonwealth, "acting by and through its Metropolitan District Commission" and represented by the Attorney General, had standing to maintain a suit in equity against the Massachusetts Turnpike Authority to have adjudged invalid and ineffective purported takings by the Authority of land of the Commonwealth by eminent domain and to restrain certain action by the Authority in relation to the land on the basis of such purported takings. [251–252]

The consent of the Commonwealth by St. 1952, c. 354, § 7, to the "use" of its lands by the Massachusetts Turnpike Authority for the construction or operation of its turnpike does not extend to taking of such lands by the Authority by eminent domain. [253]

The general power given by St. 1952, c. 354, § 5 (k), to the Massachusetts Turnpike Authority to take by eminent domain unspecified "public lands" "as it may deem necessary for carrying out the provisions of" c. 354 did not empower the Authority to take certain lands of the Commonwealth in Boston, under the control of the Metropolitan District Commission, for the construction of the Authority's turnpike "from a point or points within" Boston pursuant to § 1, as amended by St. 1955, c. 47. [253–255]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on January 10, 1963.

The suit was reserved and reported by *Reardon, J.,* after overruling a demurrer of the defendant.

*Harvey E. Weir,* Special Assistant Attorney General (*William D. Quigley & Edward L. Kilroy* with him), for the Commonwealth.

*James W. Kelleher* (*Edward U. Lee* with him) for the Massachusetts Turnpike Authority.

WILKINS, C.J. This bill of complaint, which "represents" that it is brought by the Commonwealth, "acting by and through its Metropolitan District Commission," prays that certain takings by the defendant Massachusetts Turnpike Authority "be declared illegal and of no force or effect," and that the Authority "be restrained from entering upon the lands of the petitioner [*sic*] or in any way interfering with the operation of the water and sewer systems and the other duties of the petitioner [*sic*] in the control of flood conditions in the Charles River" and "from entering upon or taking possession of that portion of a reservation road known as Soldiers Field Road." An interlocutory decree was entered overruling the Authority's demurrer to the bill, and the case is here upon a report by the single justice of the correctness of that ruling. G. L. c. 214, § 30.

The bill first makes allegations as to the powers and duties of the commission in the construction, maintenance, and operation of sewer and water systems and a park system with roadways and boulevards; in maintaining gates and locks and the Charles River Flood Gates; in constructing, maintaining, and operating a new dam at the location of the abandoned Warren Avenue Bridge in Boston; and in the exclusive care and control of the Charles River Basin (see St. 1909, c. 524, § 2). Then follow these allegations. The Authority, acting under St. 1952, c. 354, and St. 1958, c. 384, purported to take, by orders of taking recorded in the Suffolk registry of deeds, the fee in the following land in Boston belonging to the Commonwealth and under the control of the commission: (1) approximately eight acres in the Charles River; (2) approximately eight acres in the Charles River Reservation, including a

roadway known as Soldiers Field Road; and (3) 20,098 square feet in which a shaft for fresh water supply descends to a tunnel approximately 300 feet below the surface; all, it would seem, in the Charles River Basin. The Authority intends to fill the eight acres in the Charles River for the purpose of relocating Soldiers Field Road. This filling would cause irreparable damage by removing the minimal safety factor now available for proper flood control. Further allegations need not be stated.[1]

The demurrer has four grounds: (1) The bill "states no cause of action at law or in equity." (2) The bill "sets forth no case within the equity jurisdiction of this Court." (3) The plaintiff has no standing to maintain the bill. (4) There is an adequate remedy at law.

We attach no importance to the representation in the bill that it is brought by the Commonwealth acting by and through the commission. We also give no effect to the use of the word "petitioner" as sometimes referring to the Commonwealth and sometimes to the commission. What is now important is that the Commonwealth is the party plaintiff, and the case is presently prosecuted by the Attorney General. The third ground of demurrer must fail.

The other grounds raise but one substantial question of law, namely, whether the Authority has been empowered to take by eminent domain these three pieces of real estate belonging to the Commonwealth. For this we are referred to certain provisions of St. 1952, c. 354, as amended. "The Massachusetts Turnpike Authority (hereinafter created) is hereby authorized and empowered, subject to the provisions of this act, to construct, maintain, repair and operate at such location as may be approved by the state department of public works a toll express highway . . . from a point in the vicinity of the city of Boston *or from a point or points within said city* to a point at or near the boundary

---

[1] The factual consequences naturally are not set forth in the bill, but well might have been in the contemplation of the Legislature. We expect that a trial on the merits would lead to findings as to those consequences, including the necessity for counterbalancing takings by the commission.

line between the Commonwealth and the State of New York or such part or parts thereof as it may determine . . . ." St. 1952, c. 354, § 1, as amended by St. 1955, c. 47, which added the italicized words. "The Authority is hereby authorized and empowered . . . (k) To acquire in the name of the Authority . . . by the exercise of the power of eminent domain . . . such public lands, parks, playgrounds, reservations, cemeteries, highways or parkways, or parts thereof or rights therein . . . as it may deem necessary for carrying out the provisions of this act . . ." (§ 5). "If the Authority shall find it necessary to change the location of any portion of any public highway, it shall reconstruct the same at such location as the Authority shall deem most favorable, with the approval of the state department of public works . . . . The commonwealth hereby consents to the use of all lands owned by it, including lands lying under water, which are deemed by the Authority to be necessary for the construction or operation of the turnpike." (§ 7)[1]

It is not argued and could not be soundly contended, that the consent in § 7 "to the use of all lands owned by it" embraces a power to take by eminent domain.[2] See *Fay* v. *Fay*, 1 Cush. 93, 104.

We cannot construe § 5 (k) with its general reference to unspecified "public lands" as a conferring by the Commonwealth of a blanket power to take by eminent domain any land of the Commonwealth which the Authority chooses. In *Boston Water Power Co.* v. *Boston & Worcester R.R.* 23 Pick. 360, 398, it was said by Chief Justice Shaw, "So, if a power were given in general terms, to lay out a turnpike . . . between termini definitely expressed, such general power ought not to be so construed as to take an arsenal, fort, state-house, or land already appropriated to a highly important public use, which would be defeated by such construction. It would be a question of legislative intent; and it could not be presumed, that the legislature intended that

---

[1] Amendments of § 7 by St. 1958, c. 384, are not material.

[2] Note the employment in this limited sense of the word "use" in G. L. c. 92, § 32, relating to the powers of the commission.

the power conferred by them should have such an effect, unless it were unequivocally expressed." See *Boston & Albany R.R.* v. *Cambridge,* 166 Mass. 224, 225. "Land appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end." *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, 591. *Springfield* v. *Connecticut River R.R.* 4 Cush. 63, 72. *Byfield* v. *Newton,* 247 Mass. 46, 57. *Bauer* v. *Mitchell,* 247 Mass. 522, 528. It has not been made to appear that any physical necessity of which the Legislature must have been aware requires the proposed highway to be located at the sites of the purported takings.

In *Appleton* v. *Massachusetts Parking Authy.* 340 Mass. 303, the city of Boston, and not the Commonwealth, was the owner of the property which the Authority purported to take. Although we held that taking to be valid, we nevertheless were careful to emphasize a provision in St. 1958, c. 606, which was similar to St. 1952, c. 354, § 5 (k). At p. 310 we said: "We do not regard § 5 (k) as a roving eminent domain provision which could be used to take as yet unspecified substantial portions of the Common and the Public Garden. The areas in which the garage and the tunnel from Commonwealth Avenue are authorized to be built are definitely delineated by § 2 (e) and (h)." No such delineation is present in the statute in the case at bar. The original enactment in 1952 contemplated a highway "from a point in the vicinity of the city of Boston" to the New York State line. St. 1952, c. 354, § 1. See 1952 Senate Doc. No. 1, p. 44; 1952 House Doc. No. 613 (North-South highway proposal). Section 5 (k) has appeared in substance in various statutes relating to other State projects. See *Appleton* case, 307n. The land in controversy is all within the city, and was not brought within the termini of the proposed highway until St. 1955, c. 47. This land could not have been within the contemplation of the Legislature when § 5 (k) was enacted in 1952. The *Appleton* case, therefore, which dealt with a relatively small area specifically described, does not aid the Authority.

Upon the allegations of the bill, the proposed use of the real estate for highway purposes either is inconsistent with its present uses, or is an interference with the commission's exclusive control, or both. Such proposed use is not definitely authorized by St. 1952, c. 354, as amended.

Support for our not making too broad a construction is to be found in the extensive powers of eminent domain conferred upon the commission. See G. L. c. 92, §§ 77–80. Should the contention of the Authority be upheld, the commission might try to retake the same real estate. Lacking a narrow construction, the Authority and the commission might successively try to take and retake the property ad infinitum. Such a result could not have been intended and is not to be favored. If the legislative intent be that the Authority should have the right for which it contends, an express statute, if ever deemed necessary and otherwise valid, could readily be phrased to that effect.

*Order overruling demurrer affirmed.*