JOSEPH PAUL SACCO & others *vs.* DEPARTMENT OF
PUBLIC WORKS.

Middlesex.    May 4, 1967. — June 7, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Great Pond. Public Works. Commonwealth,* Real property. *Public Land.*

The Department of Public Works was not authorized by St. 1965, c. 679, and the part of St. 1956, c. 718, § 6, referred to in c. 679, or by G. L. c. 91, § 2, to fill a portion of a great pond included in a State highway by a relocation thereof.

BILL IN EQUITY filed in the Superior Court on October 10, 1966.

The suit was heard by *Beaudreau, J.*

*Rudolph Kass & Robert J. Muldoon, Jr.,* for the plaintiffs.

*Harold Putnam,* Assistant Attorney General (*Richard A. Hunt,* Assistant Attorney General, with him), for the defendant.

*Stephen F. Ells & Arnold W. Hunnewell, Jr.,* for Conservation Law Foundation, Inc., amicus curiae, submitted a brief.

---

SPIEGEL, J.   The plaintiffs, all residents of the town of Arlington, seek by this bill in equity to enjoin the Department of Public Works (department) from conducting "any filling operations in Spy Pond" and for a determination that such operations are unlawful.   The case was heard in the Superior Court on a statement of agreed facts.   The trial judge made findings, rulings and order for decree.   A final decree was entered dismissing the bill.   From this decree the plaintiffs appealed.[1]

"Spy Pond is a 'great pond' within the meaning of G. L. c. 91, § 35,[2] and G. L. c. 131, § 1,[3] . . . is owned by the Commonwealth . . . and is under the custody and control of the Waterways Division of the . . . [department].   Route 2, a state highway, abuts a section of the Pond; by an order dated May 17, 1966, the Commonwealth . . . acting through . . . [the department], laid out a re-located section of Route 2, which . . . encompassed a portion of the Pond where it abuts existing Route 2.   This order was duly recorded."

The trial judge found that although the department "is the nominal defendant . . . the real party defendant is the Commonwealth."   He ruled that the "Commonwealth was acting under powers conferred upon the . . . [department] by statute: 1965 Chapter 679, known as Accelerated Highway Act of 1965."   He also ruled that the department has "adequate authority" under that statute "to fill so much of Spy Pond as the widening of Route 2 may require."

1.   The great ponds of this Commonwealth are among its most cherished natural resources.   Since early times they have received special protection.   See Whittlesey, Law of the Seashore, Tidewaters and Great Ponds in Massachusetts and Maine (Under the Colony Ordinance of 1641–1647).

---

[1] Although the question of the plaintiffs' standing to bring this suit was raised by the pleadings, the department does not press this issue.

[2] "The provisions of this chapter relative to great ponds shall apply only to ponds containing in their natural state more than ten acres of land . . . ."

[3] ". . . [T]he following words shall have the following meanings . . . " 'Great Pond', a natural pond the area of which is twenty acres or more."

The filling of a great pond is specifically prohibited by G. L. c. 91, § 19, except "as authorized by the general court and as provided in this chapter."

The doctrine is well established that "[l]and appropriated to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation to that end." *Higginson* v. *Treasurer & School House Commrs. of Boston,* 212 Mass. 583, 591. See *Appleton* v. *Massachusetts Parking Authy.* 340 Mass. 303, 310; *Gould* v. *Greylock Reservation Comm.* 350 Mass. 410, 419, and cases cited. The defendant relies on St. 1965, c. 679, which incorporates by reference part of St. 1956, c. 718, § 6,[4] for the required legislative authorization to fill in part of this great pond for a widening of Route 2. In *Commonwealth* v. *Massachusetts Turnpike Authy.* 346 Mass. 250, 253, where we had occasion to construe nearly identical statutory language, we said, "We cannot construe . . . [such a] general reference to unspecified 'public lands' as a conferring by the Commonwealth of a blanket power to take by eminent domain any land of the Commonwealth which the Authority chooses." That decision did not rest, as the defendant argues, on our inability to determine which of two State agencies was intended by the Legislature to have paramount authority over the land in question.

In the *Appleton* case, *supra,* p. 310, a statute set out with particularity what portions of the Boston Common and Public Garden could be taken by eminent domain. St. 1958, c. 606, § 2 (e) and (h). "We do not regard § 5 (k) [of St. 1958, c. 606] as a roving eminent domain provision which could be used to take as yet unspecified substantial portions of the Common and the Public Garden."

The defendant claims that the *Appleton* case "held the Parking Authority to specific eminent-domain powers, *because* the Legislature had 'definitely delineated' the bound-

---

[4] This section states in material part, "The department . . . may, on behalf of the commonwealth, take by eminent domain under . . . [G. L. c. 79] or acquire by purchase or otherwise, such public . . . lands . . . cemeteries, public parks or reservations, or parts thereof or rights therein . . . as it may deem necessary."

aries of the taking in the authorizing statute'' (emphasis supplied). We do not agree with the defendant's interpretation of our holding in that case. Where land devoted to a public purpose is concerned, specific statutory language is *required.* The statute construed in the *Appleton* case contained such language.

The defendant also argues that, ''[i]n the face of competing public uses . . . [w]here the new use is not necessarily inconsistent with the old one, authority to take for the new use may be inferred from slight indications of intention. *Boston* v. *Brookline,* 156 Mass. 172. *Old Colony Railroad Co.* v. *Framingham Water Co.,* 153 Mass. 561.'' In the instant case, part of Spy Pond is sought to be filled and used as a highway. It would require an extraordinary imagination to conceive of this being consistent with its use as a pond. We are unable to discern even a ''slight indication'' of the required legislative intent.

In addition to relying on St. 1965, c. 679, the defendant also contends that G. L. c. 91, § 2,[5] ''appear[s] to give the . . . [department] authority to fill a portion of Spy Pond.'' But it seems clear to us that the improvement of public lands contemplated by this section does not include the widening of a State highway. It seems rather that the improvement of public lands which the Legislature provided for in this statute must be consistent with the general purposes of the statute, which is to preserve such lands so that they may be enjoyed by the people for recreational purposes. We are strengthened in our interpretation of the statute by the recently enacted St. 1966, c. 470, which reads, ''The department of public works is hereby directed that in highway construction, both by the commonwealth acting singly and in cooperation with other political subdivisions, advance planning shall provide for the protection of water resources, fish and wildlife and recreational values.'' Even though this statute was not enacted in time

---

[5] ''The department shall . . . have charge of the lands, rights in lands . . . belonging to the commonwealth, and shall . . . ascertain what portions of such lands may be . . . improved with benefit to the commonwealth.''

to govern this suit, we believe it expresses an abiding legislative concern for the preservation of our great ponds, and does not represent an abrupt change in legislative policy.

Accordingly, the final decree is reversed, and a new final decree is to be entered enjoining the defendant from conducting any filling operations in Spy Pond, with costs of appeal to the plaintiffs.

*So ordered.*