CITY OF BOSTON, Appellant,

v.

**MASSACHUSETTS PORT AUTHORITY**
et al., Appellees.

No. 71–1046.

United States Court of Appeals,
First Circuit.

June 21, 1971.

John M. Hyson, Asst. Corporation Counsel, with whom Herbert P. Gleason, Corporation Counsel, and Suzanne Delvecchio, and Thomas H. Martin, Asst. Corporation Counsel, were on brief, for appellant.

Donald R. Grant, Boston, Mass., with whom John S. Hopkins, III, and Ropes & Gray, Boston, Mass., were on brief, for Massachusetts Port Authority, appellee.

Henry Paul Monaghan, Boston, Mass., with whom Henry E. Foley, Lewis H. Weinstein, Michael B. Keating, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for Air Canada et al., appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

The City of Boston filed a 42 U.S.C. § 1983 complaint alleging jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and 1343(4) against the defendants Massachusetts Port Authority, which operates Logan Airport, and all the airlines using that facility. The complaint alleges that the noise of airplanes taking off from and landing at Logan dimin-

ishes the value of public school properties in Boston. The diminution is alleged to amount to a taking without compensation and is said to violate the due process clause of the Fourteenth Amendment.[1] The district court dismissed the complaint, 320 F.Supp. 1317, and the City appeals.

The problems of federal jurisdiction over this cause are serious ones, but we find it unnecessary to consider them.[2] Regardless of which jurisdictional statute the City invokes, it must allege a violation of due process of law as guaranteed by the Fourteenth Amendment.[3] The City, a municipal corporation and an instrumentality of the state, is in the position of suing the Port Authority, another instrumentality of the state, for taking the City's property. Since, as the City admits, the Supreme Court has long held that a state may take property from a municipal corporation without compensation,[4] the City's Fourteenth Amendment claim must rest on proof that the Port Authority's taking of its property was not authorized under state law and that by violating state law the Port Authority has violated due process.[5]

If such a claim gave rise to a federal due process cause, then the federal courts would find themselves interpreting and applying state law whenever state officials were charged with violating it. Such a result would not only explode the limits of federal jurisdiction far beyond the reach of diversity and traditional civil rights jurisdiction, but it would also impair greatly the ability of the state courts to make definitive pronouncements on state law. A mere allegation that a state official had misconstrued or misapplied state law would be enough to expose him to a federal court decision. Indeed, in this case, because it turns entirely on a question of Massachusetts law, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and involves the allocation of power between a city and a state agency, *cf.* Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 172, 62 S.Ct. 986, 86 L.Ed. 1355 (1942), we would very likely have abstained from decision even if the City could be said to have made out a cause of action under the Fourteenth Amendment. *See* Upshaw v. McNamara, 435 F.2d 1188, 1192 (1st Cir. 1970); Creel

---

1. A municipality may assert a due process claim but not one attacking the laws of the state which created it. *See* Township of River Vale v. Town of Orangetown, 403 F.2d 684 (2d Cir. 1968). Whether a municipality can assert such a claim against a state agency which is allegedly acting in a lawless manner is an issue, crucial to the City's case, which we do not reach.

2. Although this court has not yet passed on the issue, there is authority to support the proposition that no federal jurisdiction exists under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 over claims for deprivation of property rights. Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969). The City disputes this authority and argues alternatively that interference with educational environment is more than a deprivation of property rights. We do not decide whether a § 1983 claim exists, nor do we reach the issue whether general federal question jurisdiction exists under 28 U.S.C. § 1331

in the absence of a statutorily authorized cause of action. *See* Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 409 F.2d 718 (2d Cir. 1969).

3. The City does not contend that any other federal issues are involved.

4. Hunter v. City of Pittsburgh, 207 U.S. 161, 178–179, 28 S.Ct. 40, 52 L.Ed. 151 (1907); Risty v. Chicago, Rock Island & Pacific R. Co., 270 U.S. 378, 390, 46 S.Ct. 236, 70 L.Ed. 641 (1926); Reynolds v. Sims, 377 U.S. 533, 575, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). *See generally* Township of River Vale v. Town of Orangetown, 403 F.2d 684, 686 (2d Cir. 1968).

5. Any involvement by the airlines in the alleged taking is derivative from their involvement with the Port Authority. Thus, jurisdictional questions aside, we will assume that if, but only if, the Port Authority violated the law, the airlines did likewise.

v. City of Atlanta, 399 F.2d 777 (5th Cir. 1968).

We have concluded, however, that the City's complaint does not make out a federal due process claim. In Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943), the Supreme Court rejected a similar claim. The petitioner in that case brought a § 1983 action asserting that he was entitled by state law to the Republican nomination to the state legislature and that the members of the State Primary Canvassing Board had acted in violation of Illinois law by their refusal to certify him. The Court held that "mere violation of a state statute does not infringe the federal Constitution." 321 U.S. at 11, 64 S. Ct. at 402. It went on to say that "a showing of purposeful discrimination" was necessary in order to raise a claim under the Fourteenth Amendment. *Id.* "It was not intended by the Fourteenth Amendment and the Civil Rights Acts that all matters formerly within the exclusive cognizance of the states should become matters of national concern." [6]

The City makes no allegation that the Port Authority is purposefully misapplying Massachusetts law in order to discriminate against the City. Rather, the City attempts to have this court resolve the differing interpretations by the City and the Port Authority of the Massachusetts law of eminent domain. Such an allegation does not constitute a federal cause of action. The Massachusetts courts frequently make such interpre-

tations,[7] and it is that jurisdiction to which the City must turn in order to litigate this issue.

Affirmed.

6. 321 U.S. at 11, 64 S.Ct. at 403. *Accord,* Love v. Navarro, 262 F.Supp. 520 (C.D. Cal.1970); Sauls v. Hutto, 304 F.Supp. 124 (E.D.La.1969). See Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970); Dorsey v. N.A.A.C.P., 408 F.2d 1022 (5th Cir. 1969), cert. denied, 396 U.S 847, 90 S.Ct. 58, 24 L.Ed.2d 97 (1969); Charters v. Shaffer, 181 F.2d 764 (3d Cir. 1950). *Cf.* Delia v. Court of Common Pleas of Cuyahoga County, 418 F.2d 205 (6th Cir. 1969), cert. denied, 396 U.S. 886, 90 S.Ct. 174, 24 L.Ed.2d 161 (1969); Wessling v. Bennett, 410 F.2d 205 (8th Cir. 1969),

cert. denied, 396 U.S. 945, 90 S.Ct. 384, 24 L.Ed.2d 248 (1969); McCord v. Henderson, 383 F.2d 135 (6th Cir. 1967).

7. *E. g.,* Robbins v. Department of Public Works, 355 Mass. 328, 244 N.E.2d 577 (1969); Sacco v. Department of Public Works, 352 Mass. 670, 227 N.E. 2d 478 (1967); Commonwealth v. Massachusetts Turnpike Authority, 349 Mass. 1, 206 N.E.2d 74 (1965); Commonwealth v. Massachusetts Turnpike Authority, 346 Mass. 250, 191 N.E.2d 481 (1963); City of Worcester v. Commonwealth, 345 Mass. 99, 185 N.E.2d 633 (1962).