COMMONWEALTH *vs.* MERCY HOSPITAL & others.

Suffolk.    November 6, 1973. — January 23, 1974.

Present:    TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Statute,* Construction. *Hospital Service Corporation. Hospital. Words,* "Guarantee of benefits."

Upon a bill in equity for declaratory relief as to the meaning of St. 1972, c. 703, which regulates the relation between hospitals in the Commonwealth and nonprofit hospital service corporations following expiration of reimbursement agreements, it was held that the relationship is voluntary on both sides, permitting hospital service corporations to make reimbursement in the absence of a contractual relationship, but imposing no obligation upon hospitals to accept payment [518-519]; that, if hospitals do accept payment, the provision that the payment "shall be based upon the charges of the hospital in effect on such date" refers to a time "immmediately prior to the expiration of the most recent contract," and not to the time medical service is rendered [519]; and that, if the hospitals do accept payment, it is payment in full without right of the hospitals to seek further payment from the subscribers [519-522].

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on October 24, 1972.

The suit was heard by *Braucher,* J.

*Lawrence T. Perera* (*Robert L. Klivans* with him) for the intervener, Massachusetts Blue Cross, Inc.

*James B. Krumsiek* for Holyoke Hospital & another (*William K. Danaher* for Ludlow Hospital, *William E. Dwyer* for Cooley Dickinson Hospital, & *William A. Flanagan* for Mercy Hospital & another, with him).

*Melville Chapin* (*Ralph E. Duerre* with him) for Massachusetts Eye & Ear Infirmary.

REARDON, J. This bill in equity for declaratory relief requires an inquiry into the meaning of St. 1972, c. 703, which amended G. L. c. 176A, § 1. Statute 1972, c. 703, regulates the relationship between hospitals in the Commonwealth and nonprofit hospital service corporations following the expiration of reimbursement agreements which the General Laws envision as the usual mode of defining that relationship. The Attorney General of the Commonwealth brought this suit on behalf of the citizens of the Commonwealth. Massachusetts Blue Cross, Inc. (Blue Cross), a nonprofit hospital service corporation organized under G. L. c. 176A, is an intervener. The defendants and the intervener Massachusetts Eye and Ear Infirmary (hospitals) are duly incorporated and licensed nonprofit hospitals.

Until September 30, 1972, a contract existed between Blue Cross and the hospitals pursuant to G. L. c. 176A, § 1. That agreement, HA-24-C, governed the manner and amount of payments by Blue Cross to the hospitals for services furnished to Blue Cross subscribers. In the summer of 1972 the Legislature apparently believed that Blue Cross and the hospitals were unlikely to agree on a new contract before the expiration of HA-24-C on September 30, and that on such expiration all the hospitals in the State would become "nonparticipating" within the meaning of G. L. c. 176A, § 1. Under the earlier provisions of G. L. c. 176A, reimbursable services in nonparticipating hospitals in the Commonwealth were available "only in the event of accident, emergency illness or quarantinable disease." G. L. c. 176A, § 1, as amended through St. 1968, c. 432, § 1. Faced with a potentially catastrophic reduction in the provision of health care services for approximately 3,200,000 Blue Cross subscribers and dependents, the Legislature enacted St. 1972, c. 703, as an emergency act replacing the limitations on reimbursing nonparticipating hospitals mentioned. The act took effect on signature by the Governor who described the emergency preamble as: "In order to prevent any lapse in the payments to

hospitals by hospital service corporations." The statute reads as follows: "Nothing in this chapter shall prevent such a corporation from reimbursing a subscriber for services received in a non-participating hospital within or outside the commonwealth in the event of accident, illness or maternity or, upon the written direction of the subscriber, from making payment to said hospital for such services; provided, however, that the amount of such reimbursement and payment to any such hospital within the commonwealth shall conform with such method of payment and guarantee of benefits as shall have been in effect pursuant to section five of this chapter immediately prior to the expiration of the then most recent contract between said hospital and said corporation and shall be based upon the charges of the hospital in effect on such date." Blue Cross and the hospitals put different interpretations on the statute. Blue Cross took the position that the statute required the hospitals to accept as full payment for services rendered to subscribers payments by Blue Cross based on hospital charges in effect on September 30, 1972, and that the hospitals were prohibited from seeking direct payment from individual subscribers for either the full charges or for any excess claimed over the Blue Cross payment. The hospitals held, on the other hand, that on the expiration of the contract they were free to place initial and primary responsibility for bills on individual subscribers, and that they were not required to accept Blue Cross payments as either full or partial payment for services provided subscribers but that they could accept such payments on account, collecting the difference between the payment received and new higher charges directly from the subscribers. The Commonwealth brought this bill in the county court of the Supreme Judicial Court. On October 26, 1972, the single justice issued an order temporarily restraining the hospitals "from refusing to accept as payment for hospital services rendered the written directions of the subscribers to Massachusetts Blue Cross, Inc. to make payments . . . for said services . . .." After the parties filed a statement of agreed facts the single justice, on November

13, 1972, entered a memorandum and an order for final decree.[1] Under that ruling the hospitals were declared free to refuse to accept any payment from Blue Cross in satisfaction of the bills for services furnished subscribers. The single justice also held, however, that any payments accepted from Blue Cross must be regarded as payment in full. A hospital could seek a greater amount directly from the subscriber if no payment had been accepted from Blue Cross but not if it had been so paid. A final decree was entered on December 6, and seasonable claims of appeal were filed. With one modification we affirm the decree of the single justice.

1. We deal first with Blue Cross's contention that St. 1972, c. 703, obliges the hospitals to accept payments from Blue Cross as payments in full for services performed for subscribers. By its plain terms the statute, with the exception discussed below, places no obligations whatsoever on the hospitals. Indeed, G. L. c. 176A nowhere directly creates such responsibilities. That chapter provides only that hospital service corporations may enter into contracts with hospitals, and it is these contracts which explicitly define the obligations of hospitals to Blue Cross and its subscribers. Like its predecessor provisions, St. 1972, c. 703, merely permits Blue Cross to make reimbursement payments outside such a contractual relationship under prescribed conditions. While St. 1972, c. 703, greatly expanded the hospital services for which such reimbursement would be allowed, we cannot attribute to the Legislature an intention to alter the basic contours of the relationship laid down between nonparticipating hospitals and Blue Cross. To do so would be to fly in the face of the Legislature's retention of the very same words which introduced the prior provision: "Nothing in this section shall prevent such a corporation from reimbursing a subscriber for services received in a non-participating hospital," followed by the limitations imposed on such payments. This language plainly evinces an intention to regulate a relationship which is voluntary on both sides. We

[1]The original bill also sought enforcement of G. L. c. 93A, but that part of the bill was dismissed without prejudice.

will not enlarge the statute to create a new duty on hospitals to maintain any relationship with Blue Cross if they deal with subscribers. See *Martinelli* v. *Burke,* 298 Mass. 390, 392 (1937).

2. The hospitals argue that if they do accept reimbursement payments from Blue Cross the statute requires the amounts paid to be based on the hospital's higher charges current at the time the subscriber is a patient. They reach this surprising interpretation by construing the last phrase of St. 1972, c. 703, "based upon the charges of the hospital in effect on such date" as referring to the date on which the services were rendered. Such an interpretation is inconsistent with the plain meaning of the statute. The statute calls for the "method of payment" in use "immediately prior to the expiration of the then most recent contract" which all parties agree to be application of a "cost to charges ratio" to actual hospital charges.[2] The statute then specifies the raw data to be used with such method as "the charges of the hospital in effect on such date." It takes little ratiocination to discover that "such date" must refer to some time previously mentioned in the statute. Cf. *Calcagno* v. *P. H. Graham & Sons Co. Inc.* 313 Mass. 364 (1943). Since only one time is referred to in the statute, that "immediately prior to the expiration of the then most recent contract," it is charges as of that date on which rates of reimbursement are to be based.

3. The final question to be determined is the effect of acceptance of Blue Cross payments on the hospitals' right to seek further payment directly from the subscriber. The hospitals' position is that they may accept the Blue Cross payments "on account," not forgoing any direct rights against the subscriber. Blue Cross argues that such payments constitute payment in full and extinguish any right against the  subscriber. The resolution of this issue presents a dif-

---

[2]This formula was set out in complicated detail in the appendices to HA-24-C and derived from the requirement of G. L. c. 176A, § 5, as amended through St. 1969, c. 874, § 1, that contracts between hospitals and hospital service corporations provide rates of reimbursement which "reflect reasonable costs or are based on charges made to the general public, whichever is lower." This was accomplished by essentially applying various percentages to the hospital charges.

.

ficult problem of statutory interpretation. As has been noted, St. 1972, c. 703, by its explicit terms places no obligations on the hospitals. However it does specify that the "reimbursement and payment . . . shall conform with such . . . guarantee of benefits as shall have been in effect pursuant to section five of this chapter immediately prior to the expiration of the then most recent contract." We think any obligation of the hospital in connection with payment by Blue Cross must derive from this statutory insistence that the payment "conform with . . . [a] guarantee of benefits." General Laws c. 176A, § 5, provides: "Every contract made by such corporation with a participating hospital or provider of other health services shall contain a provision whereby such hospital or provider of other health services guarantees to subscribers or their dependents or employees, or dependents of employees of employers who contribute the subscription fees in whole or in part the benefits of the subscriber's certificate in effect at the time such services are provided notwithstanding the ability of such corporation to pay therefor." HA-24-C complies with this requirement in the following section: *"MISCELLANEOUS* E. *Guarantee of Benefits* Notwithstanding any inability of Blue Cross to pay therefor, the Hospital guarantees that every Member, whenever during the term of this Agreement he shall be a patient of the Hospital shall be furnished by the Hospital all services specified in his Contract as benefits provided by Blue Cross and then ordinarily furnished directly or indirectly by the Hospital; provided, however that: 1. No Member shall, by virtue of such membership, be entitled at any time to become a patient of the Hospital; and 2. While such a patient, every Member shall be subject to all rules, regulations, and policies which the Hospital shall apply generally to all patients."

We interpret the term "guarantee of benefits" in St. 1972, c. 703, to refer to the same guarantees dealt with in the above quoted provisions. The words are practically identical. The Legislature is presumed to use a term in the sense in which it has been used before in the same context. See *In-*

*surance Rating Bd.* v. *Commissioner of Ins.* 356 Mass. 184 (1969). Yet the meaning of the phrase as used in St. 1972, c. 703, is unclear. The "guarantee of benefits" in the quoted provisions refers to a commitment of the hospital to provide services. But the statute requires that "the amount of such reimbursement and payment to any such hospital . . . shall conform with . . . [the] guarantee of benefits." It is difficult to comprehend how a payment to the hospital can "conform" with a contractual obligation of the hospital. Nevertheless it is our task to construe the statute in such a way as to make it an effective piece of legislation, see *Appleton* v. *Massachusetts Parking Authy.* 340 Mass. 303, 309 (1960), and in that connection every phrase should be given some effect. *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 225 (1961). We believe that use of the words "guarantee of benefits" must place some obligation on the hospitals, and that for the payment to "conform" to the guarantee means that payment is conditioned on the hospital continuing its guarantee of benefits. By accepting that payment the hospital accedes to the condition and agrees to continue its guarantee.

Having come this far we must determine precisely what it is a hospital must do to make good on its guarantee. Under the ordinary contract situation envisioned by G. L. c. 176A, we believe the "guarantee of benefits" is intended to assure that subscribers will receive the services promised by their contract with Blue Cross. Specifically, the hospital must provide these services "notwithstanding the ability of such corporation[s] to pay therefor." G. L. c. 176A, § 5. If a hospital bound by its contractual guarantee did not in fact receive the agreed on reimbursement from Blue Cross we think it is clear that the hospital could not attempt to charge the subscriber. Otherwise the "guarantee of benefits" required by St. 1972, c. 703, would be a nullity since it would give the subscriber little more than he had without it. There is a presumption against such an interpretation. *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 314 (1949). A similar construction is reasonable in St. 1972,

c. 703. In each case the "guarantee of benefits" must be understood to relieve the subscriber of potential direct liability for services rendered by the hospital without regard to the hospital's ability to recover its charges from Blue Cross. Under St. 1972, c. 703, this guarantee becomes operative when payment calculated in the manner specified is accepted by a nonparticipating hospital. As we have already noted, the statute leaves the hospital free to eschew any payment at all and therefore any "guarantee of benefits."[3]

We believe this interpretation squares with a sensible recognition of legislative intent in the circumstances facing the General Court at the time of enactment. The statute preserves the general rule of G. L. c. 176A that all hospital relations with hospital service corporations be based on voluntary dealing by both parties. At the same time it lifts the narrow restrictions on Blue Cross payments to nonparticipating hospitals of the previous provisions which would have prohibited reimbursement and allows the hospitals and Blue Cross to continue to coöperate on an ad hoc basis on the terms of the last agreement even in the absence of a long term contract.

4. There is a minor ambiguity in the final decree entered by the single justice. Paragraph (c) of that decree declares that "Chapter 703 *requires* Blue Cross to make payment" to the hospitals in the amounts discussed above (emphasis supplied). While that particular manner and amount of payment is indeed mandatory, the statute is in fact permissive with respect to the decision to reimburse. The obligation to make any payment is, as the memorandum of the single justice points out, a matter of contract between Blue Cross and its subscribers, and is not presented in this case. Paragraph (c) of the decree should be altered to read: "(c)

---

[3]Since the hospitals are under no obligation to provide service at the rates required by the statute, the hospitals' claim that such rate regulation is confiscatory and an improper impairment of contract and therefore unconstitutional is inapposite. Whether the Legislature could require the hospital to provide services to Blue Cross subscribers at particular rates or could require them to accept certain amounts in full satisfaction of liability for services rendered to subscribers are questions not before us and we express no opinion on them.

Chapter 703 requires that payments made by Blue Cross to the hospitals on the written direction of a Blue Cross subscriber for services rendered to the subscriber be in an amount conforming to the method of payment and based on the charges in effect on September 30, 1972, without regard to rate increases subsequent to September 30, 1972.'' As so modified the decree is affirmed.

*So ordered.*